DIANE E. HAWKINS *vs.* STEPHEN A. HAWKINS.

Hampden. January 8, 1986. — April 23, 1986.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Practice, Civil,* Appeal, Dismissal of appeal. *Rules of Appellate Procedure.*

In the circumstances, the judge in a proceeding for modification of a sep-
aration agreement was warranted in finding that the plaintiff's failure to
comply with Mass. R. A. P. 8 (b) (3) and Mass. R. A. P. 9 (c) (2) was
due to inexcusable neglect, and, consequently, did not abuse his discre-
tion in dismissing the plaintiff's appeals from the denial of her complaint
for modification and from an order for sanctions, and in denying the
plaintiff's motions for reconsideration and to vacate the order of dismis-
sal. [404-409]

COMPLAINT for divorce filed in the Hampden Division of
the Probate and Family Court Department on January 13, 1982.

A complaint for modification was filed on April 28, 1983.

Motions to dismiss appeals, and motions for reconsideration
and to vacate the order dismissing the appeals were heard by
*Joseph E. Rodgers,* J.

The Supreme Judicial Court granted a request for direct
appellate review.

*George Nassar* for the plaintiff.

*Wendy Sibbison* for the defendant.

LYNCH, J. The plaintiff, Diane E. Hawkins, appeals from
orders of the Probate Court dismissing, on procedural grounds,
her appeals from (1) an order dismissing her complaint for
modification of the separation agreement; and (2) an order
allowing the defendant's motion for sanctions against the plain-
tiff's attorney. The plaintiff also presses the merits of her two
dismissed appeals.

In September, 1982, the parties' separation agreement was
approved by a Probate Court judge, a judgment of divorce nisi
based on an irretrievable breakdown of the marriage, G. L.

c. 208, § 1A, issued, and the divorce became absolute in March, 1983. In April, 1983, the plaintiff filed a complaint for modification of the separation agreement alleging, after amendment, that (1) the agreement had been entered into by mistake, fraud, misrepresentation, and under duress and emotional stress, and (2) the plaintiff had developed serious health problems which constituted "changed circumstances" and resulted in her unemployment and permanent disablement. After a hearing, a judge found that the agreement was not the product of fraud, mistake or misrepresentation, and was not entered into under duress. He further found that the agreement was fair and equitable when the judgment absolute entered, that the agreement survived as an independent contract, that the plaintiff is not disabled to the extent that she will become a public charge, that the defendant complied with the terms of the agreement, and that "something more than a material change of circumstances has not been shown." The judge dismissed the complaint and the plaintiff appealed. In October, 1983, the defendant filed a motion, pursuant to Mass. R. Dom. Rel. P. 30 (g) (1), for sanctions and costs contending that the plaintiff's attorney failed to appear for a scheduled deposition. After a hearing, a judge found that the plaintiff's own statement of facts in the memorandum in opposition to the motion for sanctions revealed that the plaintiff's attorney was aware of the date and time of the deposition and that he "knowingly and willfully" cancelled the deposition without giving notice to the defendant's attorney. The judge imposed sanctions totaling $674.44, and the plaintiff again filed a timely appeal.

In September, 1984, the defendant filed motions to dismiss the plaintiff's two appeals, alleging that the plaintiff had failed to comply with Mass. R. A. P. 8 (b) (1), as appearing in 378 Mass. 932 (1979), with Mass. R. A. P. 8 (b) (3) (ii), inserted by 388 Mass. 1106 (1983), and with Mass. R. A. P. 9 (c) (2), as appearing in 378 Mass. 935 (1979). On October 3, 1984, a judge granted the defendant's motions to dismiss the two appeals, pursuant to Mass. R. A. P. 10 (c), as appearing in 378 Mass. 937 (1979), finding no showing of excusable neglect in the plaintiff's failure to comply with rule 8 (b) (3) (ii) and

rule 9 (c) (2) as of the date of the hearing. After the plaintiff's motions for reconsideration and to vacate the order of dismissal were also denied, the plaintiff again appealed. She then applied for direct appellate review by this court, alleging that a clause in the separation agreement providing for the cessation of alimony payments upon the event of the plaintiff's subsequent cohabitation with a member of the opposite sex[1] violates the

---

[1] Paragraph 8 of the agreement provides:

"The husband agrees to pay to the wife as alimony the sum of two hundred ($200.) dollars each and every month, commencing the first day of the first month following the execution of this agreement until such time as one of the following events occurs:

"a. The remarriage of the wife.

"b. Cohabitation for any period of time with a non-related male companion.

"c. Sale of the real estate located at 52 Bryn Mawr Drive, East Longmeadow, Mass.

"Upon the occurrence of the first of the preceding events, the husband's obligation to pay alimony to the wife shall cease and determine."

Paragraph 13 of the agreement provides:

"In the event the aforesaid real estate is sold by the husband prior to September 1, 1989, the husband shall pay to the wife the full balance due on the mortgage note and the wife agrees to furnish a discharge of said mortgage; further, in the event of the remarriage or cohabitation for any period of time with a non-related female companion of the husband prior to September 1, 1989, the husband agrees to pay the wife two thousand five hundred ($2,500.) dollars each year on the said mortgage note following the remarriage or such cohabitation until September 1, 1989, when the remaining balance due and owing to the wife will be paid in full."

The judge found that the defendant remarried in April, 1983 and that the plaintiff began cohabitating with a man three months after the divorce and was residing with this individual at the time of the hearing on the plaintiff's complaint for modification of the separation agreement. The judge "infer[red] that due to [paragraphs 8 and 13] of the agreement, . . . alimony payments to the plaintiff have ceased."

We observe that in any event, sale of the real estate described in paragraph 8 (c) occurred within a month following the hearing. The defendant's attorney represented to this court without challenge that the plaintiff married her male companion about a month prior to our hearing of this case. Although discussion of the plaintiff's constitutional objection to the cohabitation clause was a subject of a pretrial conference and order, plaintiff's counsel conceded at oral argument before this court that he offered no evidence and made no argument at the hearing on the complaint to modify the separation agreement concerning the constitutionality of the clause. The judge also found that the propriety of the clause was not raised as an issue before him and that he therefore did not address it.

equal protection clause of the Fourteenth Amendment to the United States Constitution and that "judicial condonation" of the provision constitutes State action for purposes of invoking the Fourteenth Amendment. We granted direct appellate review. Because we hold that the Probate Court correctly dismissed the plaintiff's two appeals, we do not reach the merits. There was no error.

We now address the propriety of the dismissal of the appeals and set forth the facts revealed by the record. The plaintiff's appeals were filed on August 6, 1984. On August 7, 1984, the plaintiff wrote a letter to the assistant register of the Probate Court requesting him to "inform me of the number of tapes relating to the hearings in this case which are in existence, as well as, the total cost I shall incur in obtaining them." The assistant register responded promptly, listed seven hearing dates and the corresponding number of tapes available for each date, and concluded "17 tapes @ $15 ea. $255." It was evident from the list of dates and tapes that one date appeared twice and that the two tapes available for that date were doubled in the calculation of the total seventeen. On September 10, 1984, the plaintiff was given notice of the defendant's motions to dismiss the plaintiff's appeals. On September 12, 1984, the plaintiff hand delivered a letter to the register of probate ordering seventeen tapes for six hearing dates, and a letter to the defendant advising him that tapes had been ordered for the six dates. The hearing on the motions to dismiss was held on September 26, 1984. On October 1, 1984, the plaintiff wrote to the assistant register and inquired as to the availability of tapes for hearings held on two dates not listed by the assistant register in his reply to the plaintiff's August 7 inquiry. The assistant register responded that five tapes existed for those two dates.

Massachusetts R. A. P. 10 (c),[2] authorizes a judge of a lower court to dismiss appeals, on a finding of inexcusable neglect,

---

[2] Rule 10 (c) provides: "If any appellant in a civil case shall fail to comply with rule 9 (c) . . . , the lower court may, on motion with notice by any appellee, dismiss the appeal, but only upon a finding of inexcusable neglect;

for failure to comply with rule 9 (c). Under rule 9 (c) (2), the plaintiff was required, within forty days after filing her notice of appeal, to "deliver to the clerk of the lower court either (i) a transcript of . . . proceedings which the appellant deems necessary for determination of the appeal, or (ii) a signed statement certifying that the appellant has ordered such portions from the court reporter." In addition, rule 8 (b) (3) (ii) required the plaintiff, simultaneously with her filing of the notices of appeal, to "order from the clerk of the lower court . . . a cassette copy of the electronic recording" of the proceedings. Within fifteen days of receipt of the cassette from the clerk, the plaintiff was also to "file in court and serve on each appellee a document which includes the date of receipt of the cassette." [3] Rule 8 (b) (3) (ii). The procedures mandated by these provisions of rule 8 (b) (3) (ii) are acts "reasonably necessary to enable the clerk to assemble the record." Rule 9 (c) (1). As failure to perform these acts thus constitutes a violation of rule 9 (c), noncompliance with these provisions of rule 8 (b) (3) (ii) also entitles the lower court, on a finding of inexcusable neglect, to dismiss the appeals. See *Doten* v. *Doten,* 395 Mass. 135, 138 (1985), and case cited. See rule 10 (c).

The judge found that "[n]o order has been certified to by the Plaintiff that the transcripts of the cassettes have been ordered except an oral representation at the hearing that they have been ordered. There is no definite date as to when the cassettes will be ready or certification ordering the same in the record." He further found that the plaintiff "has not complied with" rule 8 (b) (3) (ii) or rule 9 (c) (2) "as of the date

---

otherwise, the court shall enlarge the appellant's time for taking the required action. If, prior to the lower court's hearing such motion, the appellant shall have cured the noncompliance, the appellant's compliance shall be deemed timely."

[3] Massachusetts R. A. P. 8 (b) (3) (ii) further provides that this document shall include "a designation of the parts of the cassette the appellant intends to include in the transcript; and the name, address, and telephone number of the individual or firm selected to prepare the transcript, provided that the appellant and each appellee have agreed to this choice and the appellant so states. If the appellant and appellees have not so agreed, said document shall also specifically notify the clerk to select the transcriber."

of the hearing." The record reveals that the judge's findings are amply supported by the evidence. Proper compliance with the rules would have required the plaintiff to order the cassettes on August 6, simultaneously with the filing of her appeal. Rule 8 (b) (3) (ii). Instead, no cassettes were ordered until September 12, immediately following the plaintiff's receipt of the defendant's notice of the motions to dismiss. The plaintiff was also to file a document with the court, and serve the defendant with one as well, within fifteen days after she received the cassette copies, stating the date she received the copies and designating parts of the cassette to be transcribed. Rule 8 (b) (3) (ii). Although the plaintiff did file such a document on October 1, within fifteen days after she received the cassettes on September 19, she had ordered the cassettes more than a month late. According to the record, the plaintiff never served the defendant with a document complying with this rule. The rules further required the plaintiff to deliver either a transcript or a signed statement certifying that the tapes were being transcribed, to the clerk or register's office, by September 15, forty days after her appeal was filed. Rule 9 (c) (2). The plaintiff waited until October 1, before she sent a letter to the register stating that the cassettes had been delivered to a reporting service for transcription. No entry regarding transcription appears on the docket until November 13, 1984.

It is clear that the plaintiff did not comply with the rules prior to the hearing and she herself does not seriously contend otherwise.[4] Although cassettes were eventually ordered by the plaintiff prior to the September 26 hearing on the motion, the document stating the date the plaintiff received the cassettes was not filed in court until after the hearing, and was never served on the defendant. Similarly, the letter "certifying" that transcripts were ordered was sent after the hearing as well, and the docket entry referring to the transcription is dated well

---

[4] The plaintiff's brief does contain a reference to her August 6 letter to the assistant register as a request "that she be informed *and provided* with the exact number of cassette recordings of the proceedings" (emphasis added). To the extent that this statement suggests that the August letter was more than a request for information, it is erroneous.

after the hearing. There is also no indication that the plaintiff ever complied with the requirements of rule 8 (b) (3) (ii) regarding the selection of a transcriber. See note 3, *supra*. The plaintiff, then, failed to avail herself of the "rescue apparatus in the last sentence of rule 10 (c)" which provides "[i]f, prior to the lower court's hearing such motion, the appellant shall have cured the noncompliance, the appellant's compliance shall be deemed timely." *Points East, Inc.* v. *City Council of Gloucester,* 15 Mass. App. Ct. 722, 725 (1983).

The plaintiff primarily[5] disputes the judge's finding that "[n]o showing of excusable neglect has been proved to the satisfaction of the Court," for the plaintiff's failure to follow procedures prescribed by rules 8 (b) (3) (ii) and 9 (c) (2). She contends that her noncompliance was excusable because the delay was attributable to errors of the staff of the register of probate's office.[6] She offers as evidence that delay was not due to her

---

[5] The plaintiff also argues that the defendant's motions to dismiss should not have been allowed because the motions do not "state with particularity the grounds on which [they are] based." Mass. R. A. P. 15 (a), 365 Mass. 859 (1974). The plaintiff contends that, since the defendant also allegedly did not file his brief until the hearing, the plaintiff was subjected to "trial by ambush." Even if we found that the defendant's motions failed to comply with rule 15 (a), it is clear that the plaintiff did not suffer the prejudice she claims. It is evident that she was fully cognizant of the basis for the motions. Despite protestations that she was left "completely in the dark as to the nature of the Appellee's contentions," her Memorandum of Law in Opposition to Appellee's Motion to Dismiss adequately and explicitly addresses the precise issues relevant to a motion to dismiss pursuant to rule 10 (c).

[6] The plaintiff additionally suggests that her neglect was excusable in part because her "financial situation severely hampered her effort to promptly assemble" the record. This was the primary argument in her Memorandum of Law in Opposition to Appellee's Motion to Dismiss. We need not decide whether financial difficulty would be deemed excusable neglect as an error not attributable to the appellant, since on the facts of this case we find the plaintiff's argument disingenuous. The plaintiff had expended the funds necessary to order the cassettes prior to the hearing on the motions to dismiss. She contends on appeal, as she apparently did before the judge below, that, at the time of the hearing, the cassettes were already in the process of being transcribed. The plaintiff cannot have it both ways. If indeed the tapes were being transcribed, it does not follow that financial constraints prevented her filing a signed certification that the transcription process was underway.

own failure to take the action necessary to cause timely record assembly: (1) the error apparent on the face of the assistant register's response to her August 7 request for information about available tapes; and (2) the discovery, as a result of her October 1 inquiry, that tapes existed for two dates not previously listed in the August correspondence.

We have said that an appeal should not be dismissed for failure to follow the rules of appellate procedure if the error was not attributable to the appellant. *Mailer* v. *Mailer,* 387 Mass. 401, 406 (1982), and case cited. *Gilmore* v. *Gilmore,* 369 Mass. 598, 602 (1976). It does not follow, of course, that a finding of excusable neglect is automatically warranted whenever an appellant can produce some evidence of error by a clerk's or register's office. The appellant must demonstrate that such an error reasonably caused his or her failure to comply with the rules and was thus "not attributable to the appellant." We reiterate that the responsibility for expediting appeals is "squarely on the appellant," and that excusable neglect calls for "unique or extraordinary circumstances." *Mailer* v. *Mailer, supra* at 406, 407, and case cited.

The plaintiff was required to order cassettes at the time she filed her notice of appeal. Any misunderstanding about the total number of tapes does not excuse this requirement. Moreover, the plaintiff does not suggest why she delayed two months and waited until after the hearing on the motions to dismiss, to inquire as to the availability of tapes for two hearings she terms "very crucial." Neither does she advance any reason why she could not have sent the court and the defendant a notice of receipt of the cassettes she did order and receive, or file a certification that those tapes were being transcribed, prior to the hearing. We do not think the plaintiff has shown that her failure to comply with rules 8 (b) (3) (ii) and 9 (c) (2) was due to any error but her own. See *Dorrance* v. *Zoning Bd. of Appeal of N. Attleborough,* 7 Mass. App. Ct. 932, 933 (1979) (dismissal appropriate where appellant failed to follow the rules and noncompliance was not due to "misfiring in other parts of the appellate machinery"). Compare *Superintendent of Worcester State Hosp.* v. *Hagberg,* 374 Mass. 271, 273-274

(1978) (possibility that clerk's office lost appeal papers and that judge had "declared that the court had been derelict" and not the plaintiff); *Gilmore* v. *Gilmore,* 369 Mass. 598, 602-603 (1976) (appellee cited no action appellant failed to take to cause timely assembly). Particularly where the plaintiff has not provided this court with a complete transcript of the hearing on the motions to dismiss, there is no evidence that the judge abused his discretion, *Vyskocil* v. *Vyskocil,* 376 Mass. 137, 139 (1978), in allowing the motions to dismiss. See *Foreign Auto Import, Inc.* v. *Renault Northeast, Inc.,* 367 Mass. 464, 472-473 (1975). See also *Doten* v. *Doten, supra* at 141; *Commonwealth* v. *Rosenfield,* 20 Mass. App. Ct. 125, 128-129 (1985).

We have said that, in assessing a motion to dismiss under rule 10 (c), the judge should consider whether the procedural error materially prejudiced the appellee. *Mailer* v. *Mailer, supra* at 406. In neither her briefs nor her argument before this court did the plaintiff contend that the defendant suffered no prejudice by virtue of the plaintiff's failure to comply with the rules. It has been observed that "[a]ppellees, particularly, are entitled to the progress of appeals with reasonable dispatch and to some protection against purposeful stretching out of appellate proceedings. When an appellant files a notice of appeal he must treat that step as something more than taking out an option to appeal." *Points East, Inc.* v. *City Council of Gloucester, supra* at 726, citing *Taylor* v. *S. & D. Enterprises, Ltd.,* 601 F.2d 175, 176 (5th Cir. 1979). See *Doten* v. *Doten, supra* at 140. With these sentiments in mind, and without argument or a transcript to indicate lack of prejudice, we will not assume that the judge's findings were not adequately supported.

Although this court may consider whether equity requires that the appellant's procedural errors be overlooked and the order of dismissal reversed, *Doten* v. *Doten, supra,* and cases cited, we do not believe that such action is appropriate in this case. See Mass. R. A. P. 3 (a), as amended, 378 Mass. 927 (1979).

*Orders dismissing appeals and denying motions
to vacate and for reconsideration affirmed.*