JANICE D. PATTEN *vs.* STEPHEN S. MAYO.

Essex.   December 12, 1986. — March 18, 1987.

Present: GREANEY, C.J., WARNER & FINE, JJ.

*Divorce and Separation,* Appeal, Assembly of record. *Rules of Appellate Procedure. Probate Court,* Jurisdiction. *Jurisdiction,* Probate Court. *Contract,* Illegality.

In litigation arising out of financial disputes relating to the parties' separation and divorce, this court vacated an order dismissing the wife's appeal, where, although the wife had been at least negligent in failing to bring a "statement of the evidence or proceedings" under Mass.R.A.P. 8(c) promptly before the trial judge for approval or settlement, there existed no precedent placing this burden on the appellant, rather than the clerk; where no explicit finding of inexcusable neglect was made by the trial judge; and where the record did not reveal that the wife's delay had prejudiced the husband's right to present his arguments on appeal. [658-660]

Where this court concluded that the materials contained in the record appendix would permit it to decide the merits of a reinstated appeal, it did not remand the case to the trial court for assembly of a record. [660-661]

A Probate Court which heard litigation arising from parties' separation and divorce had jurisdiction to hear the husband's counterclaim against the wife and to award damages. [662]

It was error for a Probate Court judge to give effect to an illegal agreement between a husband and wife under which the wife was to report incorrectly as alimony on her Federal income tax return certain payments which she had received from her husband for her support and that of her minor children. [662]

COMPLAINT for divorce filed in the Essex Division of the Probate and Family Court Department on February 27, 1981.

A complaint for contempt, filed on March 20, 1984, was heard by *Edward J. Rockett,* J.

*Edward T. Patten* for the plaintiff.

FINE, J. The parties to this case at one time were husband and wife; the litigation arises out of financial disputes relating

to their separation and divorce. The wife brought an action for contempt of a support order; the husband filed a counterclaim for modification. The judge made findings and rulings and issued an "order" of contempt on December 12, 1984, in which he also ruled in favor of the husband on his counterclaim. With the amount of arrearages due to the wife offset against the damages awarded to the husband on the counterclaim, the wife owed the husband $5,093.58. The judge based his decision on informal sidebar representations of opposing counsel on May 18, 1984, supplemented in a minor way by subsequent correspondence. Apparently neither party objected to the informality of the procedure. On January 9, 1985, the wife filed a notice of appeal. Because there was no stenographic or electronic record of the Probate Court proceedings, she filed, on February 6, 1985, a "statement of the evidence or proceedings" pursuant to Mass.R.A.P. 8(c), as appearing in 378 Mass. 933 (1979). On February 19, 1985, the husband filed objections to the rule 8(c) statement. The objections were not timely, and they have not been reproduced in the record before us. No further action was taken in connection with the appeal until February 12, 1986, when the husband filed a motion to dismiss it "due to . . . lack of prosecution and failure to comply with statute and rules relating to appeal." The motion was allowed, without any findings, on February 26, 1986. The wife's appeal from the order dismissing the appeal is now before us. Only the wife filed a brief;[1] in it she addresses both her right to appeal and the merits.

1. *Dismissal of the appeal.* The wife contends that she complied precisely with the applicable rules in prosecuting her appeal. Relying on cases such as *Gilmore* v. *Gilmore,* 369 Mass. 598, 602 (1976), she asserts that any procedural error was not attributable to her, and dismissal "would unduly punish [her] for circumstances beyond . . . her control." We disagree with her assertion that she did all that was required of her. The responsibility for expediting the appeal fell squarely on

---

[1] When the panel determined that it might reach the merits of the appeal, the husband was given the opportunity to file a brief on the one possibly meritorious issue raised by the wife. No brief was filed, however.

her as appellant. See *Vyskocil* v. *Vyskocil,* 376 Mass. 137, 139 (1978); *Mailer* v. *Mailer,* 387 Mass. 401, 407 (1982); *Doten* v. *Doten,* 395 Mass. 135, 140 (1985); *Hawkins* v. *Hawkins,* 397 Mass. 401, 408 (1986).

Under Mass.R.A.P. 8(c), once a statement of the evidence and proceedings has been filed and the period for the appellee to file a timely objection has run, "[t]hereupon the statement and any objections or proposed amendments thereto shall be submitted to the lower court for settlement and approval and as settled and approved shall be included by the clerk of the lower court in the record on appeal." An appellant may not file a rule 8(c) statement and then simply let it languish for a year, relying on the clerk (in a Probate Court, the "register," see Mass.R.A.P. 1[c], 365 Mass. 844 [1974]), to submit it to the trial judge. It was not reasonable to expect the register on his own motion to bring the matter before the judge. See Uniform Probate Practice XXI.[2] The burden was on the wife as appellant to request a hearing within a reasonable time. Massachusetts Rule of Appellate Procedure 9(c)(2), as appearing in 378 Mass. 936 (1979), requires that, within forty days of filing a notice of appeal, the appellant deliver to the clerk of the lower court either a transcript or a statement that the transcript has been ordered. Although the forty-day period in rule 9(c)(2) does not expressly apply to the delivery of an approved rule 8(c) statement to the clerk, for a case in which a transcript is unavailable, an approved or settled rule 8(c) statement is necessary to enable the clerk to assemble the record. The statement takes the place of a transcript for purposes of appeal. See, e.g., *Commonwealth* v. *Rosenfield,* 20 Mass. App. Ct. 125, 127 (1985). In these circumstances, rule 9(c)(2) provides some guidance as to what is a reasonable time within which an appellant ought to seek approval or settlement of a rule 8(c) statement. See *Dorrance* v. *Zoning Bd. of Appeal of No. Attleborough,* 7 Mass. App. Ct. 932, 933 (1979). Compare *Reiter Oldsmobile, Inc.* v. *General Motors Corp.,* 6 Mass.

---

[2] Practice XXI provides: "Matters may be placed upon the motion and ex parte list only by written request or by personal entry by the party or his attorney at the Registry."

App. Ct. 637, 639-640 (1978). Beyond a period like the one set forth in rule 9(c)(2), the judge's recollection of the trial cannot reasonably be expected to survive in sufficient detail to permit him to resolve conflicts about what occurred. The wife's attorney should have understood his obligations under the rules to bring his rule 8(c) statement promptly before the trial judge. We state, if it has not been absolutely clear up to now, that an appellant has that obligation. The failure of the wife in this case amounted at the least to negligence.

Massachusetts Rule of Appellate Procedure 10(c), as appearing in 378 Mass. 938 (1979), requires a finding of "inexcusable neglect" before an appeal may be dismissed for failure to prosecute it diligently. See *Mailer* v. *Mailer,* 387 Mass. at 405-406; *Tammaro* v. *Colarusso,* 11 Mass. App. Ct. 44, 47 & n.7 (1980). Although the trial judge could have found inexcusable neglect on the basis of the wife's "serious misstep," see *Dorrance* v. *Zoning Bd. of Appeal of No. Attleborough,* 7 Mass. App. Ct. at 933, and may have done so implicitly, he made no such explicit finding. In any event, under Mass.R.A.P. 3(a), as appearing in 378 Mass. 927 (1979), we are authorized to exercise our independent judgment whether to let an appeal proceed in a given case. See *Mailer* v. *Mailer,* 387 Mass. at 407, and cases cited; *Doten* v. *Doten,* 395 Mass. at 140; *Tammaro* v. *Colarusso,* 11 Mass. App. Ct. at 48-49, and cases cited. We exercise our discretion in this case to reach the merits of the appeal. We do so for several reasons: in general, a party should be afforded every reasonable opportunity to have his appeal considered; there is no explicit statement in the rules of appellate procedure or, to our knowledge, in any applicable precedent placing the burden of promptly submitting a rule 8(c) statement to the trial judge for approval or settlement on the appellant rather than on the clerk; an explicit finding of inexcusable neglect was not made; and, finally, the record does not reveal any way in which the husband's right to present his arguments on appeal has been prejudiced. Contrast *Hawkins* v. *Hawkins,* 397 Mass. at 407-409.

Ordinarily, upon reinstating an appeal, we would remand the case to the trial court for assembly of a record. See *Mailer*

v. *Mailer,* 387 Mass. at 408. Realistically, however, we doubt that the trial judge has any memory of the trial at this late date; remand would not be meaningful. Because we may not rely on the appellant's unapproved statement as an accurate presentation of the case, see *Capodilupo* v. *Petringa,* 5 Mass. App. Ct. 893, 894 (1977), without acceptance by the other party, *Churbuck* v. *Churbuck,* 9 Mass. App. Ct. 464, 467 (1980), cf. *King* v. *King,* 373 Mass. 37, 38-39 (1977), such a situation would ordinarily make appellate review impossible. We are satisfied in this case, however, that we can resolve the issues on appeal on the basis of the record appendix, which includes the pleadings and the judge's memorandum of decision.

2. *The merits.* The wife brought an action for contempt alleging arrearages in support payments. The judge found that the husband owed her $4,140 for unpaid support. The husband filed a counterclaim for modification alleging, among other things, intentional wrongdoing on the wife's part causing him a monetary loss. According to the judge's findings on the counterclaim, the husband and wife had agreed orally in January or February of 1981 that the wife would report as alimony on her separate 1980 tax return the $14,524 which she had received from the husband for her support and that of her minor children, and that he would reimburse her for any resulting tax liability. The wife filed the return in accordance with the oral agreement and incurred a tax liability in the amount of $2,660, for which the husband reimbursed her. When a dispute arose some time later between the parties over the amount of support the wife was due under their 1981 separation agreement, she filed an amended tax return for 1980, reporting the $14,524 as child support and not alimony. As a result, the wife became entitled to a tax refund of $2,660, and the husband was required to pay an additional $5,979.87 in taxes plus $3,253.71 in interest, or a total of $9,233.58. The judge ruled that the wife's actions constituted a breach of the oral agreement, and he ordered her to pay damages to the husband in the amount of $5,093.58, the difference between the contract damages, which he found to be $9,233.58, and the support payments of $4,140 owed to the wife.

a. The wife contends that the Probate Court lacked jurisdiction to hear the husband's counterclaim. The dispute concerned property rights arising out of the dissolution of the marital relationship. It fell, therefore, within the "plenary equity jurisdiction [of a Probate Court] in 'controversies over property' between divorced persons." *Wood* v. *Wood,* 369 Mass. 665, 670-671 (1976). That jurisdiction includes the authority to award damages. *Id.* at 671. See also *Glick* v. *Greenleaf,* 383 Mass. 290, 294-295 (1981).

b. The wife contends that the oral agreement was illegal and that it was error, therefore, for the judge to enforce it against her. At the time of the agreement, the parties were married, and there was no written separation agreement in existence between them and no court order in force. The wife is correct that, in these circumstances, the agreement was illegal. I.R.C. § 71(a)(1)(2)(3) (1954). See 3 Bittker, Federal Taxation of Income, Estates and Gifts § 77.1.2 (1981); Brown, Tax Strategies for Separation and Divorce §§ 4A.03, 4.04, 4.06 (1984); Rotenberg, Domestic Relations: The Substantive Law, c. 13, at 96 (1984). Compare *Lucas* v. *Earl,* 281 U.S. 111 (1930). As an attempt to mislead the taxing authorities by shifting income from the husband, who earned it, to the wife, who was in a lower tax bracket, the agreement was against public policy and ought not be judicially enforced. See *Goldfarb* v. *Marchionne,* 12 Mass. App. Ct. 933, 934 (1981); Restatement (Second) of Contracts §§ 178, 179 (1979); compare *Reuter* v. *Ballard,* 267 Mass. 557, 563 (1929).

Implicit in the judge's order enforcing the agreement against the wife is the determination that she should bear the responsibility for the taxes due on her husband's income. There was no justification for that determination. We think that fairness requires that the parties at least share the burden of the interest imposed as a result of the delay in payment of the full amount of taxes owed. The delay in payment was equally attributable to husband and wife who appear to have entered into the illegal agreement willingly. See *Goldfarb* v *Marchionne,* 12 Mass. App. Ct. at 934; compare *Council* v. *Cohen,* 303 Mass. 348, 354-355 (1939).

Accordingly, the judgment is amended to change the amount which the wife is ordered to pay from $5,093.58, to $146.85.[3]

*So ordered.*

---

[3] The wife owes the husband $2,660, the amount the husband had reimbursed her for the taxes she paid initially, plus $1,626.85, her one-half share of the interest, less the $4,140 the husband owes her for support.