JOANN MARIE CACCIA *vs.* RICHARD GERALD CACCIA.

No. 94-P-93.

Essex. October 12, 1995. - May 1, 1996.

Present: JACOBS, LAURENCE, & LENK, JJ.

*Rules of Appellate Procedure. Practice, Civil,* Appeal. *Divorce and Separation,* Appeal, Division of property, Alimony, Attorney's fees. *Mental Impairment. Minor,* Visitation rights.

In a divorce proceeding, the probate judge incorrectly dismissed the wife's appeal from the judgment for alleged violation of Mass.R.A.P. 8 (b) (1), where that rule was inapplicable to the proceedings. [378-379]

In a divorce proceeding there was no merit to the wife's claim that the judge erred in declining to make findings on the issue of the wife's competency at trial. [379]

In a divorce proceeding, the judge's division of marital assets and awards of alimony and counsel fees were not equitable where the judge's findings did not adequately take into consideration the wife's present and future needs in light of the wife's mental illness. [379-382]

In a divorce proceeding there was no error in the judge's orders with respect to visitation and as to the competency of the wife to execute certain documents relating to the disposition of the marital home. [382]

COMPLAINT for divorce filed in the Essex Division of the Probate and Family Court Department on March 24, 1989.

The case was heard by *Mary McCauley Manzi*, J., and certain posttrial motions were also heard by her.

*Elizabeth B. Dunn* for Joann Marie Caccia.

*Richard E. Blumsack* for Richard Gerald Caccia.

LENK, J. Following a trial on cross complaints for divorce under G. L. c. 208, § 1B, Joann Caccia (the wife) appeals from the judgment and certain postjudgment rulings entered by a judge of the Probate and Family Court. The wife contends that there was error (1) in the dismissal of her appeal; (2) in the failure to make findings as to the wife's competency; (3) in the manner of dividing the marital assets,

awarding alimony, ordering the execution of certain documents, and determining visitation; and (4) in the award of counsel fees to Richard Caccia (the husband).

We take the facts from the judge's findings and from the uncontroverted evidence before her. The parties were married in 1977, a first marriage for each, and they had two children together. At the time judgment entered on March 22, 1993, the parties had been married for approximately fifteen years, their daughter was eleven years old and their son nine, the husband and the wife were each about forty years old and had last lived together on March 24, 1989, at their jointly-purchased marital home. During their years together, the parties enjoyed a comfortable middle income lifestyle. The husband was the primary wage earner and provider, working in automobile sales, while the wife was primary homemaker and at-home parent, who at various times also did office work and was a family daycare provider.

While the husband's health is good, the wife suffers from a serious mental illness which has not responded to medication. The onset of this illness was contemporaneous with the parties' separation, and, since that time, the wife has undergone numerous psychiatric hospitalizations. She has also faced criminal charges apparently stemming from conduct not unrelated to her mental health problems. The wife, who does not entirely acknowledge the gravity of her illness, has been almost continually hospitalized or incarcerated since May, 1990, and has otherwise apparently resided with her mother. The two minor children live with their father in the marital home and the husband has become primary homemaker. The wife's prognosis for returning to the community in the near future is not good. The children have had very limited contact with their mother because of her hospitalizations, and not because of any lack of interest or affection on her part.

Following the parties' separation, the husband continues to enjoy a middle income lifestyle, while the wife's station has declined to low income. Through employment, the husband has the ability to acquire future income as well as future assets, limited, however, by his role as sole support of the children. The wife has had no income, apart from modest and often belated alimony payments, and, in light of her psychiatric history and the criminal charges brought against her, her employability and ability to acquire future assets are quite limited.

The parties' major asset is the marital home, which, at the time judgment entered, had roughly $145,000 of equity. Apart from the husband's substantial debt for legal fees, which we shall address further below, the parties' other liabilities were relatively modest. Their other assets (sailboat, two cars, husband's pension, two I.R.A.'s, contents of the home and personal effects) were divided equally between them.

*Dismissal of the appeal.* Following the entry of judgment, the wife filed a timely notice of appeal. After several posttrial motions were heard and decided, the wife filed an amended notice of appeal on July 10, 1993. On September 23, 1993, the trial judge allowed the husband's motion to dismiss the appeal, presumably brought pursuant to Mass.R.A.P. 10(c), as amended, 378 Mass. 938 (1979). The trial judge agreed that the wife had failed timely to order a transcript, as required by Mass.R.A.P. 8(b)(1), as amended, 378 Mass. 932 (1979), and had failed to deliver to the register of probate either that transcript or a certificate that it had been ordered, as required by Mass.R.A.P. 9(c)(2), as amended, 378 Mass. 936 (1979). Without explaining why, the judge found inexcusable neglect. The wife thereafter brought a motion to reinstate appeal, contending correctly that Mass.R.A.P. 8(b)(3), as amended, 388 Mass. 1106 (1983), and not 8(b)(1), applies to trials such as this which are electronically recorded. The wife explained that her motion for a trial transcript at the expense of the Commonwealth had been timely brought and allowed, that no response to her written inquiry to the register of probate as to whether she need do anything further had been received, that counsel's prior experience with that office was that such requests for transcripts were handled internally by the court, that she had responded to a telephone inquiry from the register's office as to the trial dates in question, that nothing further had been heard from the court, but that delays of several months, as here, in receiving notification regarding the identity of the transcriber chosen by the court and the expected completion of the transcript were not unusual. Without hearing, the trial judge denied this motion, for the same reasons she had dismissed the appeal, and also cited to *Hawkins* v. *Hawkins*, 397 Mass. 401 (1986). The wife timely appealed from this ruling.

While the wife may not have taken every step required by rule 8(b)(3), it seems clear that there was a sustained effort to

comply with what experienced counsel understood to be the "established policy" of that register of probate's office. See Mass.R.A.P. 8(b)(3)(ii), as amended, 388 Mass. 1107 (1983). We note as well that Mass.R.A.P. 9(c)(2) was amended in 1994 so as to clarify that it has no application to electronically recorded proceedings. 417 Mass. 1601 (1994). As the Reporters' Notes indicate, Mass. Ann. Laws, Rules of Appellate Procedure, at 12 (Law. Co-op. Supp. 1996), this amendment renders inapplicable the contrary holding in *Hawkins* v. *Hawkins, supra.* More importantly, we discern no material prejudice to the husband resulting from any procedural error. *Mailer* v. *Mailer,* 387 Mass. 401, 406 (1982). Dismissal of the wife's appeal on these grounds was unwarranted. Moreover, even if there were no error below, we could reinstate this appeal. Mass.R.A.P. 3(a), as amended, 378 Mass. 927 (1979). Given all of the circumstances here, such reinstatement is appropriate.

*The wife's competency.* The wife argues that the trial judge erred in declining to make any findings on the issue of the wife's competency. The wife contends that this alleged failure resulted in insufficient consideration of her mental condition, its ramifications in implementing the judgment entered, and in inconsistencies in such judgment. There is no merit to this argument.

At oral argument, the wife conceded that her competency to testify at trial is itself not in dispute. In this regard, we note as well that a guardian ad litem had been appointed for the wife under G. L. c. 208, § 15, as is appropriate during the pendency of a divorce action where a party is incapacitated by reason of mental illness. *Andrews* v. *Andrews,* 27 Mass. App. Ct. 759, 760 (1989). Moreover, the wife did not request the judge to make specific findings as to competency, nor did she request a competency hearing, seek a trial continuance, or object to the trial going forward. Finally, it is plain from the judge's findings that she was well aware of the wife's psychiatric history and hospitalizations and took the wife's mental illness into consideration when fashioning her judgment. There was no error.

*The division of marital assets, alimony, orders for execution of documents, visitation and counsel fees.* The wife contends that the trial judge's division of marital assets, particularly the marital home, does not adequately consider the wife's

mental illness and her present and future needs, and argues that the judge's findings do not clearly articulate her rationale for the manner in which the marital assets were divided and alimony awarded. We are constrained to agree.

The principles that guide our review of the fairness of marital property division are well established. *Pare* v. *Pare,* 409 Mass. 292, 296 (1991), and cases cited. Under G. L. c. 208, § 34, a judge has broad, but not unlimited, discretion to divide marital assets equitably. Judges are required, when dividing marital property, to make express findings indicating that all relevant § 34 factors have been considered. The reasons for the judge's conclusions, moreover, must be apparent in her decision. A judgment dividing property that is "plainly wrong and excessive" cannot stand. See *Redding* v. *Redding,* 398 Mass. 102, 107 (1986).

In dividing the marital home, which the parties agreed need not be sold before the children's emancipation, the trial judge noted that her "initial consideration of the § 34 factors points to an equal division of this asset. The husband is in a stronger position with regard to those factors which relate to ability to earn income and to support oneself. On the other hand, he is the primary caretaker and sole support of two young children and his needs are greater than those of the wife." The judge had previously determined that the wife had few, if any, current needs because of her commitment to a State mental hospital. In dividing the marital home, the judge gave no apparent consideration to the wife's future needs, despite the uncertainty of the wife's mental condition and the desirability for some flexibility in providing for those needs. However, the judge awarded the wife alimony of fifteen dollars a week (plus ten dollars weekly in payment of an arrearage in excess of $4,000) while confined to a mental health or correctional type facility, subject to reevaluation when the wife returns to independent living in the community. Unlike the equitable division of marital assets, which cannot be altered, alimony is subject to modification. *Bush* v. *Bush,* 402 Mass. 406, 409 (1988). *Andrews* v. *Andrews,* 27 Mass. App. Ct. at 761.

Notwithstanding the judge's initial view that the marital home should be divided equally, this was not the outcome. Instead, the judge allocated to the wife fifty percent of the husband's substantial legal fees, as well as half of a credit

card debt, these to be deducted from the wife's portion of the then home equity. Additionally, although the home need not be sold until the emancipation of the children, the wife was to receive the fixed sum of $57,000 when the home was sold, remortgaged or, at the husband's option, any time before those events. The wife, then, would not share in any appreciation of the property in which her husband and children would live even though she would likely have no access to any proceeds for a number of years.

There was no evidence before the court to support the judge's findings that the magnitude of the husband's legal fees was attributable to the wife's mental illness. The docket, moreover, does not suggest that the trial judge had acted on any significant number of pretrial motions which might supply some insight in this area. The trial judge had not conducted a hearing on counsel fees, even when requested by the wife's counsel. Indeed the judge responded to the wife's posttrial motion for an evidentiary hearing on attorney's fees by denying that attorney's fees had been assessed, presumably regarding such fees as just another debt. This was error. Not to put too fine a point on it, the judge was in fact shifting a portion of the husband's counsel fees onto the wife, and, under any definition, this constitutes an award of attorney's fees. Such an award may not be made without adequate findings based on sufficient evidence.

Unquestionably, attorney's fees may be awarded in appropriate circumstances under G. L. c. 208, § 38. "[I]t remains the rule that awards in domestic relations litigation are to be governed by caution and restraint" and should take into consideration inter alia the reasonableness of the fees and the other party's ability to pay. *Kane* v. *Kane*, 13 Mass. App. Ct. 557, 560-561 (1982). Such an award, made "in the delicate setting of matrimonial litigation," must comport with "our traditional invocation of a 'conservative' approach when it comes to charging counsel fees to a party who has in no way consented." *Robbins* v. *Robbins*, 19 Mass. App. Ct. 538, 543 (1985). There are "numerous, complex variables," *ibid.*, which must enter into the judge's determination of counsel fees, none of which appear to have been considered here. See, e.g., *Cummings* v. *National Shawmut Bank*, 284 Mass. 563, 569 (1933). The judge's reallocation of counsel fees as part of the division of the marital home accordingly cannot stand.

Further, the judge's findings and rulings do not support the conclusion that she considered the wife's future needs with respect to the division of marital assets. Even if an equal division of the marital assets in combination with alimony made sense, see *Grubert* v. *Grubert*, 20 Mass. App. Ct. 811, 818-819 (1985), the denial to the wife of any appreciation in the value of the marital home, which may not be sold for many years at the husband's option, by awarding a fixed dollar amount rather than assigning a percentage interest in the value of the marital home, does not follow logically from the findings and evidence. *Dewan* v. *Dewan*, 17 Mass. App. Ct. 97 (1983), *S.C.*, 399 Mass. 754 (1987). *Yee* v. *Yee*, 23 Mass. App. Ct. 483 (1987). Nor does it recognize the wife's contribution to the support of the children thereby. *Hartog* v. *Hartog*, 27 Mass. App. Ct. 124, 128 (1989) (the postponement of sale of marital home and use and occupancy thereof by spouse with unemancipated children is a traditional child support provision).

Finally, it appears that the judge's findings as to the wife's current needs and her consequent award to the wife of negligible alimony were greatly influenced by the wife's confinement in a public mental health facility, at public expense. This was error. "As a matter of policy, a judge ought not, even if there is some financial hardship, shift to the public a party's obligation to provide support for his former spouse. . . ." *Harris* v. *Harris*, 26 Mass. App. Ct. 1004, 1005 (1988). The judge's findings suggest that her rationale for the wife remaining a public charge rests on the hardship that would otherwise redound to the children. Neither subsidiary findings nor the evidence before the court, however, demonstrates that the husband is unable to contribute meaningfully to the wife's support. *Talbot* v. *Talbot*, 13 Mass. App. Ct. 456, 458-459 (1982). For all of these reasons, we cannot say on the record before us that, as a whole, the financial arrangement ordered by the trial judge is equitable. *Grubert* v. *Grubert*, 20 Mass. App. Ct. at 819.

The wife also challenges on appeal the orders made by the trial judge as to visitation and as to the competency of the wife to execute documents relating to the disposition of the marital home. We discern no error and note, with regard to the issue of visitation, that it remains subject to review and modification if appropriate.

Accordingly, we vacate so much of the judgment of divorce nisi as pertains to the division of marital assets, the award of alimony, and the award of counsel fees. As to these matters, the case is remanded to the Probate and Family Court for further proceedings not inconsistent with this opinion. An evidentiary hearing should in any event be conducted before awarding any counsel fees, and additional evidence may be taken by the judge if deemed desirable in connection with the judge's consideration of alimony and property division. The judgment of divorce nisi is otherwise affirmed.

*So ordered.*