NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1143

DONNA GRISWOLD[1] & another[2]

vs.

JANET H. BARBATO & another.[3]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

This action, which stems from the late Adam Hart, Jr.'s, transfer of certain real property and other assets to the defendants, was tried in the Superior Court. The jury returned verdicts in favor of the defendants on the plaintiffs' claims for (1) breaches of contract, (2) fraud and deceit, and (3)

---

[1] Individually and as co-personal representative of the estate of Adam Hart, Jr.

[2] Adam Hart, Third, individually and as co-personal representative of the estate of Adam Hart, Jr.

[3] Kari A. Hart.

conversion.[4]  The plaintiffs appealed from the resulting amended judgment.

In the circumstances of this case, we are satisfied that the video recorded statement of a deceased witness was properly admitted in evidence as a statement against penal interest.  See Mass. G. Evid. § 804(b)(3) (2025).  Relatedly, we discern no error in the judge permitting defendants' counsel to, in his opening statement, refer to anticipated evidence which counsel reasonably believed would demonstrate that plaintiffs' counsel had improperly influenced potential witnesses to lie or skew facts relevant to the plaintiffs' claims.  We also conclude that the plaintiffs waived their argument that the jury's verdicts as recorded on the special verdict slip were inconsistent and that, in any event, there was no inconsistency in the jury's answers to the special questions.  Finally, we are not persuaded that the judge left any claims in law or equity unadjudicated.  Accordingly, we affirm the amended judgment.

Procedural background.  The plaintiffs' complaint was filed in 2018, and the case was tried over eleven days in 2023.  As we have noted, the jury found in favor of the defendants on all but

---

[4] The jury also found in favor of the plaintiffs and awarded them damages of $60,000 on their count against defendant Janet H. Barbato for abuse of probate process.  No party has appealed from this aspect of the judgment.

2

one of the claims submitted to them, and a final amended judgment entered on all claims in 2024. This appeal followed.[5]

Facts.[6] The plaintiffs' claims against the defendants stemmed from an intrafamilial dispute over the disposition of property in Dennisport originally owned by Adam Hart, Jr., on which Adam[7] and his family had for many years operated restaurants, hotels, and other hospitality businesses (resort property). The plaintiffs, Donna Griswold and Adam "Chip" Hart, III, and defendant Janet H. Barbato, are siblings and Adam's children; defendant Kari A. Hart is Janet's daughter and Adam's granddaughter.

---

[5] The plaintiffs moved for a new trial, and the judge denied that motion. As far as the record reveals, however, the plaintiffs did not properly appeal from the judge's ruling, and we therefore do not consider the plaintiffs' challenges to the judge's denial of their motion for a new trial. See DeLucia v. Kfoury, 93 Mass. App. Ct. 166, 170 (2018) ("A timely notice of appeal is a jurisdictional prerequisite to our authority to consider any matter on appeal"). Were we to do so, however, we would discern no basis on which to disturb the amended judgment, or to vacate the order denying the motion for a new trial.

[6] Except as noted, the parties do not disagree on the facts summarized here. This is not the first time that this complex, vigorously litigated case has been before this court, and additional background is set forth by a different panel of this court in an unpublished decision under M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020). See Griswold vs. Barbato, 101 Mass. App. Ct. 1110 (2022).

[7] We refer to Adam Hart, Jr., as "Adam" to distinguish him from plaintiff Adam "Chip" Hart, III. For convenience and in the interest of consistency, we refer to the defendants by their respective first names, as well.

3

In 2012, at the age of 85 or 86, Adam pleaded guilty in Federal court to operating a sports gambling business. He negotiated a $500,000 fine as an alternative sanction to incarceration, and planned to use the resort property as collateral for a loan to pay that fine. Mindful of the deadline for payment of the fine and advised that, as a convicted felon, he would be unable to obtain even a "hard money" loan using collateral that he owned or over which he had legal control, Adam gifted his interest in the resort property to the defendants to enable them to obtain a loan and agreed with the defendants that a portion of the loan proceeds they obtained would be used to pay his fine. The defendants then did just that.[8]

In 2015, Adam told his attorneys that he had an oral side agreement with the defendants that they would retransfer the resort property back to him after the loan closed and the fine was paid.[9] The defendants have consistently denied both the existence of the oral side agreement, and that they ever agreed to retransfer the resort property to Adam.

---

[8] The specifics of the loan and the details of its subsequent refinancing were live issues at the trial, but they are not significant to our analysis. We do not detail them here.

[9] The parties refer to this as the "gentleman's agreement." We use "side agreement."

Discussion.  1.  Admissibility of recorded statement.  As part of the parties' pretrial discovery, Timothy Reardon[10] gave a deposition in which he testified in detail and under oath that he was a percipient witness to the formation of the side agreement between Adam and the defendants.  Because, by the time of trial, both Tim and Adam had died, the plaintiffs' primary evidentiary support for the existence of the side agreement was Tim's deposition testimony, which plaintiffs' counsel was permitted to read to the jury and into the record.

In response, the defendants were permitted to admit into evidence portions of a later video recorded statement that Tim gave ex parte to defendants' counsel (recorded statement).  In the recorded statement, Tim characterized his earlier deposition testimony as "dishonest and a lie," and explicitly recanted his prior testimony about the existence of the side agreement as "not truthful."  He also represented that he had had little or no memory about certain facts at the time of the deposition and, having been coached by plaintiffs' counsel, ultimately testified untruthfully to "what [plaintiffs' counsel] wanted [him] to say."  The plaintiffs objected to the recorded statement on the ground that it was inadmissible hearsay.

---

[10] Because we refer, infra, to the testimony of Timothy Reardon's father, Kevin Reardon, we refer to them as "Tim" and "Kevin" for the sake of clarity.

5

We discern no abuse of discretion in the judge's ruling that the recorded statement was admissible as a statement against penal interest.[11]  See Commonwealth v. Andre, 484 Mass. 403, 414 (2020) ("We review a judge's evidentiary rulings for an abuse of discretion").

> "An out-of-court statement 'is admissible under the penal interest exception [to the hearsay rule] if (1) the declarant's testimony is unavailable; (2) the statement so far tends to subject the declarant to criminal liability that a reasonable person in his position would not have made the statement unless he believed it to be true; and (3) the statement, if offered to exculpate the accused, is corroborated by circumstances clearly indicating its trustworthiness.'"

Commonwealth v. Bonnett, 482 Mass. 838, 847 (2019), quoting Commonwealth v. Carriere, 470 Mass. 1, 17 (2014).  Tim's unavailability is not disputed; as we have noted, he died before trial began in this case.  Additionally, because Tim admitted in the recorded statement to lying in his earlier deposition, the recorded statement exposed him to the risk of prosecution for the crime of perjury.  See G. L. c. 268, § 1.  See also Commonwealth v. Mendez, 104 Mass. App. Ct. 341, 349 (2024),

---

[11] The judge ruled that the recorded statement was admissible on three discrete grounds:  as a statement against Tim's penal interest, see Mass. G. Evid. § 804 (b)(3) (2025); as a declaration of a decedent, see G. L. c. 233, § 65, Mass. G. Evid. § 804 (b)(5)(A) (2025); and as a subsequent inconsistent statement, see Mass. G. Evid. § 801 (d)(1)(A) (2025).  Because we conclude that the recorded statement was admissible as a statement against penal interest, we do not address its admissibility on the other two grounds.

6

quoting Commonwealth v. Walters, 472 Mass. 680, 702 (2015) ("The crime of perjury in a judicial proceeding occurs whenever one 'willfully swears or affirms falsely in a matter material to the issue or point in question'").  Lastly, the trustworthiness of the recorded statement was exhaustively argued by counsel, and the judge held a voir dire of Kari (who was present when Tim gave the recorded statement) before admitting certain portions of the recorded statement into evidence.  Accordingly, it is apparent that the judge, who had ample opportunity to assess Tim's credibility and the circumstances in which he gave the recorded statement, concluded that, at a minimum, "there [was] some reasonable likelihood that the [recorded] statement could be true."  Commonwealth v. Weichell, 446 Mass. 785, 803 (2006), quoting Commonwealth v. Galloway, 404 Mass. 204, 208 (1989).  It was therefore proper in these circumstances to permit the defendants to play the challenged portions of the recorded statement for the jury.[12]

---

[12] The plaintiffs have not persuaded us that the fact that Tim's recorded statement was made ex parte changes this analysis or requires a different result.  We are aware of no precedent that conditions the applicability of the hearsay exception at issue on notice or an opportunity to cross-examine the declarant, and the plaintiffs have not provided us with any.  We emphasize, however, that our decision in this case should not be read as an endorsement of discovery tactics that create a risk of "trial by ambush," see Hawkins v. Hawkins, 397 Mass. 401, 407 n.5 (1986), or amount to attempts to skirt the usual rules applicable to discovery and notice.  Indeed, our ruling is confined to the particular facts and procedural posture of the

2. <u>Defendants' opening statement and closing argument</u>. The judge also acted within his discretion when he permitted defense counsel to preview in his opening statement the evidence he expected would be admitted at trial, including evidence that (to the extent the jury credited it) suggested that plaintiffs' counsel had improperly influenced Tim's deposition testimony. "The proper function of an opening is to outline in a general way the nature of the case which the counsel expects to be able to prove or support by evidence." <u>Posell</u> v. <u>Herscovitz</u>, 237 Mass. 513, 514 (1921). "[One making an] opening statement may reference anything that [that person] reasonably believes in good faith will be proved by evidence introduced during the course of the trial." <u>Commonwealth</u> v. <u>Kapaia</u>, 490 Mass. 787, 800 (2022), quoting <u>Commonwealth</u> v. <u>Copeland</u>, 481 Mass. 255, 261 n.5 (2019).

Here, at the time of the opening statements, the judge had deferred his ruling on the admissibility of the recorded statement. Nevertheless, defense counsel could reasonably have believed that at least some portions of the recorded statement would be admitted, and that the recorded statement would persuade the jury that plaintiffs' counsel had manipulated Tim's deposition testimony. Where the judge had not ruled on the

present case.

8

admissibility of that evidence, his permitting defendants' counsel to refer to it in his opening was not, as the plaintiffs argue, "inconsistent with [the judge's] own rulings."

Likewise, where the judge ultimately permitted the defendants to introduce the recorded statement in evidence, we discern no error in the judge allowing defendants' counsel to refer to it in closing argument, and to urge the jury to draw inferences from Tim's statement, and that of his father, Kevin, alleging some influence by plaintiffs' counsel on Tim's deposition testimony.  See Mason v. General Motors Corp., 397 Mass. 183, 192 (1986) ("The scope of proper closing argument is limited to comments on facts in evidence that are relevant to the issues and the fair inferences which can be drawn from those relevant facts").  The portions of the recorded statement that were played for the jury permitted such a finding, and it was proper to permit defense counsel to marshal the evidence and argue the fair inferences that could be drawn from it.  See id. The judge correctly and repeatedly instructed the jury that the closing arguments were not evidence, and he also emphasized the jury's role as fact finders in the case.  See Commonwealth v. Donahue, 430 Mass. 710, 718 (2000) ("We presume that a jury understand and follow limiting instructions, and that the application of such instructions ordinarily renders any potentially prejudicial evidence harmless" [citations omitted]).

9

"[I]t [was] for [the] jury to determine what to believe." McNamee v. Jenkins, 52 Mass. App. Ct. 503, 509 (2001).

3. Jury's verdict. The plaintiffs' challenge to the jury's verdict as "inconsistent" was not raised at trial, and so is waived. See Conway v. Planet Fitness Holdings, LLC, 101 Mass. App. Ct. 89, 101 (2022). Even were we to consider the question, however, we would agree with the judge (who addressed the question when ruling on the plaintiffs' motion for a new trial) that the jury's answers to questions one and seven on the special verdict slip were not inconsistent. Question one asked whether the plaintiffs had proved "that there was an enforceable oral contract with specific contract terms between Adam Hart, Jr., [and the defendants]." The jury answered, "No." The jury then went on to consider question seven, which was conditioned on a "yes" answer to question one -- "If you find such oral . . . agreement existed, was it a knowing attempt to execute [bank fraud]?" The jury also answered this question, "No." These answers were, as the judge concluded, consistent with one another; the jury's answer to question one reflected their determination that the plaintiffs had not proven the existence of the oral side agreement, and nothing about their answer to question seven suggested that they had reconsidered that

10

conclusion, particularly in light of the error in the verdict slip's directions.[13]

4.  <u>Failure to adjudicate all claims</u>.  At trial, the judge reserved to himself the plaintiffs' claims for conversion and annulment of the alleged asset transfer agreement based on the defendant's "fraud and deceit."  On appeal, the plaintiffs argue that, because the judge did not submit these arguments to the jury, "the court did not adjudicate" the "equity issues" of (1) whether Adam was fraudulently induced to transfer assets to the defendants, requiring that the transfer documents and an amendment to a trust be reformed or annulled, and (2) whether, at the time of Adam's death, his donative intent was to disinherit the defendants and seek to recover the resort assets from them.

The judge, who presided over the trial and heard all the evidence in the case, addressed this argument in his ruling on the plaintiffs' motion for a new trial.  The judge was explicit that

---

[13] The special verdict slip mistakenly directed the jurors to answer question seven even if they answered question one in the negative.  The error in these directions went unnoticed until the deliberating jury asked a question about it; the judge then provided the jurors with correct directions.  The jury answered the remaining questions in accordance with the judge's corrected instructions.  Neither party objected to this procedure.

"to the extent that there [we]re any equitable claims reserved to [him] still pending, . . . [he] [found] as a matter of fact that there was <u>no credible evidence</u> to support the smorgasbord of theories and/or claims [presented] by the plaintiffs during the trial; or that would in any way support any of the listed claims for equitable relief listed under Count VIII ["Equitable Remedies"] of the [operative complaint]."

It is apparent that the parties had a full and fair opportunity to litigate all facets of this case.  To the extent that there remained any outstanding issues to be decided after the jury returned its verdicts, the judge's decision made clear that he resolved them against the plaintiffs.[14]

<u>Amended judgment affirmed</u>.

By the Court (Neyman, Singh & Hand, JJ.[15]),

Clerk

Entered:   August 22, 2025.

---

[14] The defendants' request for appellate attorney's fees and double costs is denied.

[15] The panelists are listed in order of seniority.

12