Eric Scheuer *vs.* Margaret Mahoney.

No. 10-P-1773.

Middlesex. September 12, 2011. - October 27, 2011.

Present: Kantrowitz, Graham, & Fecteau, JJ.

*Practice, Civil,* Appeal, Dismissal of appeal.

Discussion of the standard of review applicable to a trial court judge's order dismissing an appeal. [708]

A Superior Court judge did not abuse her discretion in concluding that the defendant's failure to take any action over the course of a four-year period to advance the process of her appeal from a judgment entered in a civil action amounted to neglect that was not excusable, and therefore the judge properly dismissed the defendant's appeal under Mass.R.A.P. 10(c) for failure to comply with Mass.R.A.P. 9(c). [708-712]

Civil action commenced in the Superior Court Department on February 26, 1999.

A motion to dismiss an appeal, filed on February 22, 2007, was heard by *S. Jane Haggerty*, J., and a motion to dismiss the appeal from the order dismissing the appeal, filed on May 25, 2010, was heard by *Kenneth J. Fishman*, J.

*Mark W. Corner* for the defendant.

*Shepard Davidson* for the plaintiff.

Fecteau, J. The defendant, Margaret Mahoney,[1] appeals from an order of a judge of the Superior Court dismissing her appeal in the underlying action. Mahoney asserts that the dismissal was erroneous in that the judge failed to recognize her alleged compliance with Mass.R.A.P. 9(c)(2), as amended, 437 Mass. 1602 (2002), and as permitted by Mass.R.A.P. 10(c), as amended, 417 Mass. 1602 (1994). We affirm the dismissal of her appeal.

*Background facts.* The plaintiff, Eric Scheuer, purchased two

---

[1]Mahoney is an attorney who represented herself at all relevant proceedings in the trial court.

adjacent lots in a residential subdivision in Winchester from Raman and Nilda Handa (the Handas) in 1997. The Handas had purchased the lots from Mahoney, the developer of the subdivision, in 1994. After the sale to Scheuer, Mahoney believed that she held the right to enforce certain deed restrictions respecting Scheuer's lots based on a restriction in the Handas' deed.[2] In late 1998, Scheuer entered into a purchase and sale agreement with third parties to sell one of his lots. After Scheuer informed Mahoney of his intentions, Mahoney purported to enforce her alleged restrictions by issuing a written "conditional refusal" designed to inform the parties' attorneys of her belief that the parcels could not be sold separately. The third-party buyers backed out of the deal with Scheuer shortly thereafter.

*Superior Court proceeding.* Scheuer sued Mahoney in Superior Court for intentional interference with his contract and violation of G. L. c. 93A, and sought declaratory relief to determine his right to sell each lot separately.[3] Scheuer subsequently brought a motion for partial summary judgment on his claim for declaratory relief. A Superior Court judge allowed the motion for partial summary judgment, held a three-day jury trial on the claim of intentional interference and damages, and reserved the claimed G. L. c. 93A violation for a later proceeding.

In allowing Scheuer's motion for partial summary judgment, the judge held that, inter alia, Scheuer was bound by the deed restrictions, the deed restrictions did not prevent the division and separate sale of his lots, Scheuer was not bound by the terms of the conditional refusal, and Mahoney could not unreasonably withhold her approval over exterior plans or any

---

[2]This restriction stated: "Said premises are to be conveyed subject to the following restrictions to which the Grantees covenant and agree for themselves and their heirs and assigns to conform: No building shall be erected, placed or allowed to stand upon the land conveyed until the exterior plans and specifications shall have been approved in writing by the grantor. No chain link or similar metal fences shall be erected along street yard lines. Exterior construction shall be completely finished within nine months of its inception. Unless a dwelling house has been erected on the premises, the grantees will not sell the land to any person without first offering it to the grantor for the purchase price."

[3]Mahoney's various counterclaims against Scheuer were disposed of separately on summary judgment and are not presently at issue.

building to be erected on either of Scheuer's lots. The judge denied Mahoney's motion for reconsideration.

At trial, the jury found that Mahoney intentionally interfered with Scheuer's contractual relations and awarded him $85,000 in damages. On December 19, 2002, the Superior Court judge found and ruled that Mahoney did not engage in unfair or deceptive conduct in violation of G. L. c. 93A. On February 20, 2003, judgment in the amount of $85,000 was entered for Scheuer against Mahoney. Mahoney filed a timely notice of appeal, and Scheuer filed a timely notice of cross appeal with respect to his c. 93A claim.[4]

*Appellate procedural background.* On March 28 and April 29, 2003, Mahoney filed statements, purportedly pursuant to Mass.R.A.P. 9(c)(2), certifying that she had "ordered the transcripts of all the events . . . and she further certifies that she has paid the estimated cost for the trial transcripts and is awaiting estimated costs of the hearing transcripts," listing eleven specific dates and events.[5] Approximately fifteen months later, Scheuer's counsel contacted Mahoney and inquired as to the status of the transcripts. Scheuer's counsel further warned Mahoney that any further delay would be met with a motion to dismiss her appeal. The record is devoid of any evidence that Mahoney took any actions with respect to her appeal until 2007. On February 22, 2007, Scheuer filed a motion to dismiss Mahoney's appeal on the grounds of her failure to file the transcripts.

---

[4]Scheuer purports to argue a cross appeal, but his cross appeal in the underlying action also was dismissed (with counsel's evident consent). Scheuer has not docketed a cross appeal and has failed to file a notice of appeal from the lower court's dismissal. Consequently, he has failed to preserve his appeal. See *Mood* v. *Kilgore*, 384 Mass. 459, 462-465 (1981) (notice of appeal filed after trial was insufficient to preserve appellant's right to appeal; full compliance required appellant to fully comply with the rules of appellate procedure). See also *Aetna Cas. & Sur. Co.* v. *Continental Cas. Co.*, 413 Mass. 730, 733-734 (1992).

[5]The certification indicates that Mahoney had ordered transcripts for the three days of jury trial and had requested estimates of cost for transcribing the G. L. c. 93A bench trial, and seven other hearings, from five different court reporters. By the time of the hearing on Scheuer's motion to dismiss the appeal on April 25, 2007, the docket contained only two volumes of transcript (December 5 and 6, 2002) from the three-day jury trial, which had been filed on April 2, 2007. On May 24, 2007, two additional transcripts (for the pretrial hearings of July 10, 2000, and May 7, 2002) had been filed.

On April 27, 2007, after hearing, the judge allowed the motion, stating:

> "After 4 years or more since the events which are the subject of this appeal, the appellant has done nothing, except request transcripts in 2003, to follow up on the whereabouts of the transcripts. I find this to be inexcusable neglect. Moreover, the Appellant has not cured her non-compliance with the [R]ules of Civil Procedure. The numerous transcripts requested by Appellant Mahoney have not been filed in the Clerk's Office (with the exception of the trial transcript) and the Appellant has done nothing to rectify that situation. The [a]ppeal and the cross appeal are hereby DISMISSED."[6]

Mahoney filed a notice of appeal from the judge's order dismissing her underlying appeal from the judgment. On June 4, 2007, she also filed a statement certifying that she had ordered the transcript of the April 25, 2007, hearing held on the dispositive motion.[7]

On January 12, 2009, the Superior Court sent notice of a special call of the docket, requiring Mahoney, as appellant, to file a status report. Mahoney filed a notice stating:

> "I am waiting for a half hour of transcription. I personally spoke with a reporter. She declined my money because she had to locate the transcript. Due to the fact that she was 'out of session' criminal reporter, she was required to transcribe the criminal cases on her docket prior to transcribing my case, related to appeal."

On May 13, 2010, the Superior Court again sent notice of a special call of the docket requiring Mahoney to file a status report. On May 25, 2010, Scheuer moved to dismiss Mahoney's appeal. On June 14, 2010, Mahoney filed her status report. On

---

[6]Counsel for Scheuer stated in the hearing: "My client actually cross appealed. If there was going to be an appeal he wanted to have his 93A claim heard. As I mentioned in our papers, if you dismiss her appeal we will absolutely dismiss our appeal, Your Honor."

[7]Neither the notice of appeal nor the certification appears in the record before us.

September 24, 2010, Mahoney filed the transcript of the April 27, 2007, hearing in question on the day scheduled to hear Scheuer's motion to dismiss Mahoney's appeal from the April 27, 2007, order. Accordingly, another Superior Court judge denied Scheuer's motion to dismiss Mahoney's appeal, and the appeal was entered in this court on October 8, 2010.

*Discussion.* a. *Standard of review.* Mahoney claims that the judge's order dismissing her appeal pursuant to Mass.R.A.P. 10(c) was in error. In *Spivey* v. *Neitlich*, 59 Mass. App. Ct. 742, 744 (2003), we observed that in the appellate review of a decision to dismiss an appeal, "[w]e apply the abuse of discretion standard to determine whether the judge was warranted in dismissing the appeal. We are also mindful, in reviewing the events in the lower court, that the burden was on the defendant, as appellant, to pursue his appeal, and to provide an adequate record for his appeal." (Citations omitted.)

b. *Dismissal under Mass.R.A.P. 10(c) and Mass.R.A.P. 9(c).* Rule 10(c) of the Rules of Appellate Procedure states, in pertinent part, "If any appellant in a civil case shall fail to comply with Rule 9(c) or Rule 10(a)(1) or (3), the lower court may, on motion with notice by any appellee, dismiss the appeal, but only upon a finding of inexcusable neglect; otherwise, the court shall enlarge the appellant's time for taking the required action." Here Mahoney relies on rule 9(c)(2)[8] in arguing that she fulfilled the technical requirements of the rule, and the judge therefore wrongfully dismissed her appeal. Mahoney contends that her signed certification to the clerk, in and of itself, fully satisfied rule 9(c)(2) and, thus, issuance of the certification negates a finding of inexcusable neglect pursuant to Mass.R.A.P. 10(c). Scheuer contends otherwise, arguing that Mahoney failed to take necessary and reasonable steps to prosecute her appeal

---

[8]Rule 9(c)(2) states, in relevant part: "[E]ach appellant in a civil case shall, within ten days after filing a notice of appeal, deliver to the clerk of the lower court either (i) a transcript of those portions of the lower court proceedings which the appellant deems necessary for determination of the appeal, [or] (ii) a signed statement certifying that the appellant has ordered such portions from the court reporter . . . . Upon receiving the transcript, the appellant in a civil case shall forthwith deliver it to the clerk of the lower court." It is undisputed that the clerk did not request Mahoney to perform any act to assist in the assembly of the records, and therefore Mass.R.A.P. 9(c)(1) is not applicable.

required by rule 9(c)(2), and that Mahoney's inaction amounts to inexcusable neglect.

This court has interpreted rule 9(c) to require action by an appellant to "move the appeal along": It is "clear from these cases and from the Massachusetts Rules of Appellate Procedure that an appellant's obligation to expedite an appeal comprehends three types of act: (1) those which an appellant is expressly mandated by rule to perform (by way of incomplete example, see rule 8[b] and rule 9[c][2]); [(2)] those which a clerk requests under rule 9(c)(1); and (3) those which are necessary to move the appeal along and which the appellant is capable of performing, irrespective of an express mandate or a request by the clerk." *Robinson* v. *Planning Bd. of Wayland*, 23 Mass. App. Ct. 920, 921 (1986). There is no evidence in the record before us that Mahoney took any action over the course of a four-year period to advance the appellate process.

In *Robinson, supra*, we affirmed the dismissal of an appeal because of the appellant's failure to adequately prosecute his appeal on a timely basis. There, the appellant failed to remedy known deficiencies in the record based on his erroneous assumption that he was only required to do so upon request of the clerk. *Ibid.* We noted that the appellant far too narrowly construed Mass.R.A.P. 9(c)(1), which requires an appellant to "perform any act reasonably necessary to enable the clerk to assemble the record," when the clerk issues such a request. The underlying obligation articulated in rule 9(c)(1) is not confined to circumstances in which the clerk directly requests the appellant to take action. The court in *Robinson* pointed to a well-settled line of Massachusetts cases clarifying the language of rule 9(c) and noting that "[i]t is . . . an appellant's duty to expedite an appeal." *Ibid.*, citing *Mailer* v. *Mailer*, 387 Mass. 401, 407 (1982); *Doten* v. *Doten*, 395 Mass. 135, 140 (1985); and *Hawkins* v. *Hawkins*, 397 Mass. 401, 408 (1986). As previously noted, *Robinson, supra*, adds that an appellant must take actions "which are necessary to move the appeal along . . . irrespective of an express mandate or a request by the clerk."

Similar to the appellant in *Robinson*, Mahoney's contention that she met her burden as an appellant under Mass.R.A.P. 9(c) and Mass.R.A.P. 10(c), respectively, is based on an erroneous interpretation of what actions are thereunder required. In fact,

she has done nothing to fulfil the requirement in *Robinson, supra,* that an appellant "move the appeal along" as long as it is reasonable to do so. Mahoney relies on *Ross* v. *Continental Resources, Inc.,* 73 Mass App. Ct. 497, 513 (2009), but such reliance is misplaced. The record in *Ross* showed periodic and repeated efforts by the appellant over the course of two years to obtain the transcript. *Id.* at 509-511. The appellant in *Ross* went so far as to bring the delay in transcript production to a trial judge, who in turn ordered the filing of the transcript within ninety days. *Id.* at 511. Based on this extensive record in *Ross,* the court ultimately held the delay attributable not to the appellant, but rather to the court reporters.[9] *Id.* at 513-514. Where the appellant took extensive action to advance the appeal, the dismissal was in error. *Id.* at 514.

Our decision in *Ross* reaffirmed the analysis in *Robinson* reiterating that the underlying purpose of rule 9(c)(2) "is to put the responsibility for expediting the appeal squarely on the appellant." *Ross* v. *Continental Resources, Inc., supra* at 512, quoting from *Mailer* v. *Mailer, supra* at 407. Where *Ross* diverges from the case at bar is in the extensive efforts made by the appellant there to facilitate assembly of the record. The court specifically noted that "counsel for [the appellant] made the requisite payments immediately." *Ibid.* Mahoney places much reliance on this court's summary of the fact-specific circumstances of *Ross,* namely that "the appellant cannot force a court reporter to do what the reporter is unable or unwilling to do. . . . Remedies for those kinds of systemic delays ultimately must come from the court, for they lie beyond any remedial powers the parties possess." *Id.* at 513-514. While we do not question the validity of that assertion, Mahoney's efforts to exercise such "remedial" powers referenced by the court in *Ross* are simply nonexistent on this record.

---

[9]Mahoney makes little effort to explain the four-year delay between her 2003 letters to the court reporters ordering the transcripts and seeking estimates of costs, and the 2007 dismissal of her appeal. Surprisingly, this pattern continued for another three years following the filing of her second notice of appeal. However, apparently because she (1) had complied with the order to provide a status report; (2) offered some proof that she had contacted the court reporter; (3) provided some indication that it was the reporter causing the delay rather than her own inaction; and (4) "cured" the noncompliance before hearing, the judge in 2010 denied the motion to dismiss her second appeal.

Moreover, Mahoney did not produce any documentation that the appeal process would have advanced but for error on the part of others over whom she had no control. "It does not follow, of course, that a finding of excusable neglect is automatically warranted whenever an appellant can produce some evidence of error by a clerk's or register's office. The appellant must demonstrate that such an error reasonably caused his or her failure to comply with the rules and was thus 'not attributable to the appellant.' " *Hawkins* v. *Hawkins*, 397 Mass. at 408. The record here reflects only that Mahoney sent letters to the court reporters in March, 2003, several of which merely sought estimates of the cost of transcription. Mahoney fails to put forth any evidence that she was powerless to avert and, therefore, not responsible for the lengthy delay in the appellate process. Even if there was some error on the part of others, the judge did not have to find "excusable neglect" and, in this case, declined to so find. Finally, Mahoney's erroneous assumption that she fulfilled the requirements of the statute is insufficient to establish "excusable neglect." In *Mailer* v. *Mailer*, 387 Mass. at 406, the court stated that "[e]xcusable neglect calls for unique or extraordinary circumstances. . . . The concept of excusable neglect does not embrace '[a] flat mistake of counsel about the meaning of a statute or rule' or other 'garden-variety oversight[s].' " *Ibid.*, quoting from *Goldstein* v. *Barron*, 382 Mass. 181, 186 (1980). Rather, the "judge [should] consider how far [the mistakes] have interfered with the accomplishment of the purposes implicit in the statutory scheme and to what extent the other side can justifiably claim prejudice." *Mailer* v. *Mailer*, *supra*, quoting from *Schulte* v. *Director of the Div. of Employment Sec.*, 369 Mass. 74, 79-80 (1975).

Given that Mahoney allowed the appeal to remain at a standstill for four years, when she was in the best position to know, vis-à-vis Scheuer and the court, the status of the estimated cost and payment for transcript preparation, the judge did not abuse her discretion in concluding that Mahoney's inaction amounted to neglect that cannot be viewed as excusable.[10] Any deficiency in the completion of the appellate record here, i.e., the lack of

---

[10]Our affirmation of inexcusable neglect on the part of Mahoney obviates any need to assess either the meritoriousness of her appellate issues, see

transcripts, remained within Mahoney's responsibility. The judge did not err in ordering the dismissal of her appeal.

*Order dismissing appeal affirmed.*

.

Vyskocil v. Vyskocil, 376 Mass. 137, 140 (1978), or prejudice to Scheuer. *Points East, Inc.* v. *City Council of Gloucester,* 15 Mass. App. Ct. 722, 725-726 (1983). It necessarily follows that we need not address the merits of the issues raised by Mahoney.