Laurisa C. Neuwirth[1] *vs*. Donald Neuwirth.

No. 13-P-775.

Middlesex. January 7, 2014. - May 1, 2014.

Present: Katzmann, Fecteau, & Milkey, JJ.

*Practice, Civil,* Appeal, Dismissal of appeal, Assembly of record. *Rules of Appellate Procedure. Attorney at Law,* Lien.

Discussion of Mass.R.A.P. 8(b)(3), which governs an appellant's responsibilities with respect to ordering a transcript of a trial court proceeding to be included in an appellate record [253-255], and discussion of Mass.R.A.P. 10(c), which provides for the dismissal of an appeal as a remedy for inexcusable neglect in ordering a transcript [255-257].

A probate judge did not commit an abuse of discretion by granting a motion to dismiss an appeal based on the appellant's tardiness in ordering that a transcript be made of the relevant court hearing, where the appellant's claim that he in good faith misunderstood his obligations did not alone constitute excusable neglect, and where the appellant's several-month delay in ordering the transcript could not be excused by his claim that problems with the court reporter's telephone caused his tardiness [257-258]; however, this court concluded that the appellant could take advantage of the cure provision contained in Mass.R.A.P. 10(c), given the relatively short delay, the appellant's actions immediately addressing the particular noncompliance at issue, and the lack of any resulting fundamental unfairness [258-261], notwithstanding a misrepresentation previously made by the appellant to the court [261-262] and other minor aspects of noncompliance that, if immediately addressed, would cause no additional delay [262-264].

Complaint for divorce filed in the Middlesex Division of the Probate and Family Court Department on May 5, 2009.

A motion to dismiss the appeal, filed on September 12, 2012, was heard by *Dorothy M. Gibson,* J., and a motion to vacate the dismissal, filed on October 22, 2012, was also heard by her.

*Peter H. Rosenthal* for Donald Neuwirth.

[1]Laurisa Neuwirth did not participate in the appeal. Smyth Law Offices, P.C., is the real party in interest, although not technically a party to the underlying litigation.

*Lisa Smyth* (*Brad W. Greenberg* with her) for Smyth Law Offices, P.C.

MILKEY, J. This case involves the efforts of the Smyth Law Offices, P.C. (Smyth Law), to collect fees allegedly owed by its former client, Donald Neuwirth (Neuwirth). Rather than filing a new claim against Neuwirth based on contract or quantum meruit, Smyth Law chose to pursue an attorney's lien in the divorce action in which it had represented him. After a Probate and Family Court judge determined the amount of such a lien and entered a supplemental judgment of divorce nisi incorporating it, Neuwirth appealed. A few months later, the same judge dismissed that appeal based on Neuwirth's tardiness in ordering that a transcript be made of the relevant court hearing. Before us now is Neuwirth's appeal of the order dismissing his underlying appeal. For the reasons set forth below, we reverse and remand.

1. *Background.* a. *The divorce action.* On May 5, 2009, Neuwirth's wife filed a complaint for divorce. The same judge who determined the amount of the lien (and who issued all other relevant rulings in the matter before us) characterized the divorce action as

> "long and protracted and [one that] involved many issues, including property division involving numerous parcels of real estate as well as issues of domestic violence that involved a full evidentiary hearing on a restraining order requested by [the wife]."

Attorney Lisa Smyth of Smyth Law represented Neuwirth in that action until the judge allowed her motion to withdraw on July 13, 2011. Shortly thereafter, Neuwirth and his wife settled the divorce action, and a judgment of divorce nisi, incorporating their separation agreement, entered on November 29, 2011.

b. *Smyth Law's lien.* Meanwhile, on September 9, 2011, Smyth Law filed a motion to establish an attorney's lien pursuant to G. L. c. 221, § 50, and later that month filed an amended version of that motion. The judge held a hearing of uncertain nature on or about January 10, 2012, at which Neuwirth represented himself. Although the transcript of that hearing is not before us, the record suggests that Neuwirth was contesting both the amount owed and the process that the judge used to assess

Smyth Law's claim to the fees. In any event, the judge allowed Smyth Law's motion, ruling as follows:

"A lien is established in the amount of $41,000 — as set forth in the affidavit filed by Lisa Smyth dated November 15, 2011, the Court finds that based on the facts of the case as well as the experience of Atty Smyth and [her associate] that the fees are fair [and] reasonable."

The judge issued a "supplemental judgment of divorce nisi" (dated February 1, 2012, and docketed February 9, 2012) that stated that the $41,000 attorney's lien "shall be incorporated" into the judgment.

c. *Neuwirth's underlying appeal.* Acting pro se, Neuwirth filed a notice of appeal from the supplemental judgment of divorce nisi on February 27, 2012. That same day, he ordered the electronic recording of the relevant court hearing (apparently the January 10, 2012, hearing). It is uncontested that Neuwirth received a copy of that recording — in the form of a compact disc (CD) — on March 12, 2012. Neuwirth, still acting pro se, sent Smyth Law a letter dated March 20, 2012, identifying Julianne Deveau as the person that he "will hire" to transcribe the court hearing for the appeal. The letter requested that Smyth Law inform Neuwirth "within 20 days of any objections that you may have," and it closed with the statement by Neuwirth that "[t]o the best of my understanding I have conformed to the rules of Appellate Procedure 8b."

d. *Smyth Law's further collection efforts.* At that point, Neuwirth's appeal sat dormant while the parties' attention turned to Smyth Law's additional efforts to collect the $41,000. Notably, the actions that the parties took during this period indicate that they both believed that Neuwirth's obligation to pay the $41,000 was not automatically stayed by the pending appeal.[2]

_____

[2]As a general matter, payment obligations included in civil judgments are automatically stayed pending appeal. See Mass.R.Civ.P. 62(d), 365 Mass. 829 (1974). However, under the rules applicable to divorce actions, payment obligations are generally stayed only where the judge grants a case-specific stay. See Mass.R.Dom.Rel.P. 62(g). The context presented here is unusual in that it involved an appeal of a collateral order issued in a divorce action that required one of the divorcing parties to make payment to an entity that was not a party to the divorce action in order to satisfy alleged contractual obligations to that entity.

For example, Smyth Law sought to have Neuwirth held in contempt for failing to pay the $41,000, while Neuwirth filed a motion requesting that the judge stay the judgment pending appeal. The judge denied Neuwirth's motion for a stay and issued the contempt judgment that Smyth Law requested. Following various twists and turns in the contempt process, Smyth Law obtained from the court a general execution against Neuwirth's "goods, chattels or lands." Smyth Law then levied the execution against investment property that Neuwirth owned in the Brighton section of Boston,[3] and a sheriff's sale of that property was scheduled for September 14, 2012.

Facing the scheduled sale of his property, Neuwirth hired counsel who filed a motion to "recall the Execution . . . [and] vacate the Amended Judgment upon which it was issued." Neuwirth argued, inter alia, that an attorney's lien was improper because the property at issue was not the product of a "judgment . . . in his . . . favor" in the divorce proceeding or "the proceeds derived therefrom." G. L. c. 221, § 50, as appearing in St. 1945, c. 397, § 1. See *Curly Customs, Inc.* v. *Pioneer Financial*, 62 Mass. App. Ct. 92, 97 (2004) (attorney's "lien exists only on proceeds obtained by the client in the underlying proceeding; consequently, if there are no such proceeds, there is no lien"). The judge rejected that argument, reasoning that Neuwirth's "retention of the [investment] property as part of the divorce settlement constitutes an award within the meaning of the cases because it extinguished any rights which the wife may have had in the property pursuant to G. L. c. 208, [§] 34, conferring the full financial benefit on the Husband."[4]

In his motion, Neuwirth also argued that an execution was improper while the underlying appeal remained pending. See G. L. c. 235, § 16, as appearing in St. 1975, c. 377, § 117

---

[3]Neuwirth alleges that he purchased this property, which he was allowed to retain as part of the divorce settlement, prior to the marriage.

[4]In support of that proposition, the judge cited only to an unpublished decision that this court issued in 2000 (in which a panel affirmed a judge's ruling that an attorney's lien was not appropriate under the particular circumstances of the property division in that divorce case). As noted *infra*, we express no opinion as to the correctness of the judge's application of the lien statute to the circumstances presented here, other than to observe that it appears to present an issue of substance.

("No execution shall issue upon a judgment until the exhaustion of all possible appellate review thereof"). Following a hearing on September 10, 2012, the judge agreed with that argument and therefore "recalled" the execution on September 12, 2012, two days before the scheduled sheriff's sale.

e. *Smyth's motion to dismiss.* As discussed further *infra,* Neuwirth's new counsel made a representation at the September 10, 2012, hearing about the transcript being delayed. Directly after that hearing, Lisa Smyth took the initiative to contact Deveau to follow up on the alleged delay. She learned that Neuwirth had not formally hired Deveau and had not even contacted Deveau since March. She passed this information along to Neuwirth's counsel to let him know that — in her words — his "client seems to have a real problem." Whether prompted by that communication or not, Neuwirth reconnected with Deveau by electronic mail message (e-mail) that very evening (as Lisa Smyth learned from Deveau the following day). After some back and forth e-mail exchanges between them, Neuwirth formally engaged Deveau to prepare the transcript.

In the interim, on September 12, 2012 — the day the execution was recalled and the day after Lisa Smyth learned that Neuwirth had reconnected with Deveau — Smyth Law filed a motion to dismiss the pending appeal pursuant to Mass.R.A.P. 10(c), as amended, 417 Mass. 1602 (1994). Pursuant to a short order of notice, the motion to dismiss was marked up for hearing on September 19, 2012.

f. *Neuwirth's defense.* Neuwirth submitted an affidavit in opposition to the motion to dismiss. In an effort to excuse his delay, Neuwirth stated that he had had numerous conversations with John Barrett, who was employed in the appeals unit of the register's office of the Probate and Family Court, regarding the production of the transcript. According to Neuwirth, he understood Barrett to say that while the transcriber had to be identified within fifteen days after Neuwirth received the CD, there was no specific deadline for the production of the transcript. Neuwirth further claimed that he did not believe a delay in the completion of the transcript would hold up the appeal, and that, in any event, he had no reason to want to delay the appeal. In this regard, Neuwirth — who had failed in his attempt to have

the judgment formally stayed pending appeal — emphasized that Smyth Law was threatening to sell his property as soon as it obtained an execution.

Neuwirth also stated in his affidavit that he unsuccessfully had tried to reach Deveau on numerous occasions since March, 2012, but was unable to do so because of problems with her telephone.[5] Finally, Neuwirth's affidavit also informed the court that by September 18, 2012, he had — by United States mail — sent the CD to Deveau to be transcribed.

The following day, the judge held a nonevidentiary hearing, and thereafter summarily dismissed Neuwirth's pending appeal. Ten days later, Neuwirth filed a motion to vacate that dismissal (supported by two new affidavits),[6] and he requested findings. Smyth Law opposed the motion but joined with Neuwirth in requesting that the judge issue findings to support her ruling. See Mass.R.A.P. 10(c) (authorizing trial court judge to allow motion to dismiss "only upon a finding of inexcusable neglect"). On December 10, 2012, the judge reaffirmed her earlier ruling, and she issued a written decision that incorporated, almost verbatim, findings and rulings that Smyth Law had proposed. For reasons discussed further below, the judge concluded that Neuwirth's explanation of his tardiness did not amount to "excusable neglect." She also concluded that Neuwirth had not cured his noncompliance by the date of the hearing on the motion to dismiss. Finally, the judge reiterated her view that Neuwirth had no reasonable likelihood of prevailing in his underlying appeal. This appeal ensued.

2. *Discussion.* An appellant's responsibilities with respect to ordering a transcript of a trial court proceeding to be included in the appellate record vary depending on the manner in which

---

[5]Neuwirth claimed that since March, 2012, he unsuccessfully tried to reach Deveau "at least six times," and that he left unreturned voicemail messages at least twice. Those claims enjoyed some support in his e-mail correspondence with Deveau attached to his affidavit, which revealed that while Deveau initially was annoyed by Neuwirth's claims that he had had trouble reaching her, she later apologized to him when she discovered on her own that her toll-free telephone line indeed had been out of order for some period. However, Deveau continued to question that her telephone had been out of order very long.

[6]The new affidavits stated, inter alia, that Neuwirth had received the transcript from Deveau by October 22, 2012.

the relevant trial court hearing was recorded. Where, as here, the hearing was "recorded electronically on equipment under the control of the court and which were not recorded by an official court reporter," the appellant's obligations generally are spelled out in Mass.R.A.P. 8(b)(3), as amended, 430 Mass. 1601 (1999).

a. *Fifteen-day notice.* It is uncontested that Neuwirth fully complied with his initial obligation to order the electronic recording at the same time that he filed his notice of appeal. His next obligation was to file with the clerk (and serve on other parties) a written notice that included the following information:

> "the date of receipt of the [recording]; a designation of the parts of the [recording] the appellant intends to include in the transcript; and the name, address, and telephone number of the individual or firm selected to prepare the transcript, provided that the appellant and each appellee have agreed to this choice and the appellant so states."[7]

Mass.R.A.P. 8(b)(3)(ii), as amended, 428 Mass. 1601 (1998). We refer to this document as the "fifteen-day notice," because the appellant is required to file it within fifteen days of receiving the recording. If the parties have not agreed on the identity of the transcriber, then in the fifteen-day notice, the appellant must "specifically notify the clerk to select the transcriber."[8]

Neuwirth partially complied with his obligation to file the fifteen-day notice. Specifically, well within fifteen days of his receipt of the CD, he filed (and served) a document that included the date that he received the recording and the identity and contact information of the transcriber that he intended to hire. The notice was deficient in two respects. First, it did not specify what portions of the recording he intended to include.[9] Second, instead of identifying a transcriber on whom the parties had

---

[7]The rules anachronistically refer to the electronic recording as a "cassette." We will use the generic term "recording," or the specific form of the recording here, a CD.

[8]In this way, the rule contemplates that before notice is due, the parties will have discussed the selection of a transcriber.

[9]Given that the proceeding at issue was a hearing on a motion and not a lengthy trial, the context suggests that Neuwirth intended to have a transcript prepared of the whole hearing.

already agreed (or notifying the clerk that no such agreement could be reached), the notice simply identified the name of the transcriber that Neuwirth intended to hire (while requesting that Smyth Law raise any objections to his going forward in this manner).

b. *Ordering the transcript.* If the appellant has designated the entire recording to be transcribed and the parties have come to an agreement as to the transcriber, then within fifteen days of receiving the recording from the clerk (that is, by the same deadline that the fifteen-day notice is due), the appellant must "also send or deliver to the transcriber" both the recording and a "written order designating the entire [recording] for transcription." Mass.R.A.P. 8(b)(3)(ii). If the appellant has not designated the entire recording for transcription, the rules build in an extra twenty days after which the appellant must "promptly send or deliver" the recording to the transcriber, a delay that leaves time for the appellee to cross-designate other portions of the recording for transcription. *Ibid.* As he now acknowledges, Neuwirth plainly did not comply with his obligations to order the transcription and to "send or deliver" the CD to the transcriber within the deadlines established by rule 8(b)(3)(ii).[10]

c. *Overview of Mass.R.A.P. 10(c).* The case law has long spoken of a delay in ordering a transcript as a " 'serious misstep,' not a 'relatively innocuous one,' the appropriate remedy or penalty for which is presumptively dismissal of the appeal." *Vyskocil* v. *Vyskocil,* 376 Mass. 137, 140 (1978), quoting from *Schulte* v. *Director of the Div. of Employment Security,* 369 Mass. 74, 79 (1975). Neuwirth makes no argument that dismissal under Mass.R.A.P. 10(c) is unavailable for a violation of the

---

[10]Exactly when those deadlines fell is subject to some uncertainty. If Neuwirth had intended to include a transcript of the entire hearing (but simply failed to say so in the fifteen-day notice), then — pursuant to at least the spirit of the rule — he should have ordered the transcript within fifteen days of receiving the CD. However, some argument can be made that under a strict reading of the language of rule 8(b), he was not obligated to order the transcript within that period, because his fifteen-day notice did not designate that he wanted all of the CD transcribed. We need not resolve precisely when Neuwirth's obligation to order the transcript attached, because under either interpretation, he failed to order it months after it was due, and the twenty-day difference is not material.

deadlines set forth in Mass.R.A.P. 8(b)(3)(ii).[11] Instead, he argues that the judge erred in how she applied rule 10(c) here.

Under the express terms of Mass.R.A.P. 10(c), a judge is authorized to dismiss an appeal only upon a finding that the appellant has committed "inexcusable neglect." However, the rule goes on to state that "[i]f, prior to the lower court's hearing such motion for noncompliance with Rule 9(c), the appellant shall have cured the noncompliance, the appellant's compliance *shall* be deemed timely" (emphasis supplied). Mass.R.A.P. 10(c). Rule 10(c) thus contemplates that there will be situations where an appellant who has committed "inexcusable" neglect nevertheless can escape dismissal by taking advantage of the cure provision. In fact, we have previously recognized that an appellant's ability to make use of the cure provision is one of the reasons why "excusable neglect" is narrowly construed. See *Points E., Inc.* v. *City Council of Gloucester*, 15 Mass. App. Ct. 722, 724-725 (1983).[12]

The appellate rules "put the responsibility for expediting the

---

[11]The language of Mass.R.A.P. 10(c) states that an appeal can be dismissed for an appellant's noncompliance with Mass.R.A.P. 9(c), as amended, 437 Mass. 1602 (2002); Mass.R.A.P. 10(a)(1), as amended, 435 Mass. 1601 (2001); or Mass.R.A.P. 10(a)(3), as amended, 378 Mass. 937 (1979). Although rule 9(c)(2) sets forth obligations for securing a transcript in other contexts, it does not apply to "electronically recorded proceedings." Instead, the specific deadlines that Neuwirth violated were set forth in rule 8(b)(3). Rule 9(c)(1) does still apply, and that rule speaks of an appellant's obligation to "perform any act reasonably necessary to enable the clerk to assemble the record." We have interpreted that obligation broadly notwithstanding that rule 9(c)(1) includes the prefatory language "upon request by the clerk of the lower court." See *Scheuer* v. *Mahoney*, 80 Mass. App. Ct. 704, 708-712 (2011) (rejecting argument that appeal could not be dismissed pursuant to rule 10[c] where appellant's tardiness in moving appeal forward did not violate specific request by clerk). Compare *Maciuca* v. *Papit*, 31 Mass. App. Ct. 540, 542 (1991) (violation of Mass.R.A.P. 8[b][3][ii] is violation of Mass.R.A.P. 9[c][1] that can be enforced pursuant to Mass.R.A.P. 10[c]), with *Ross* v. *Continental Resources, Inc.*, 73 Mass. App. Ct. 497, 512-513 (2009) (violation of Mass. R.A.P. 8[b][1], as amended, 430 Mass. 1603 [1999], is not automatically violation of Mass.R.A.P. 9[c] that can be enforced pursuant to Mass.R.A.P. 10[c]).

[12]In *Points E., Inc.* v. *City Council of Gloucester*, 15 Mass. App. Ct. at 724, the court recognized that even before the cure provision was added to Mass. R.A.P. 10(c) in 1979, "[i]n recognition of the severity and finality of a dismissal of an appeal, the decisional law has tempered justice with mercy and accorded to appellants considerable leeway in repairing the consequences of their procedural errors."

appeal squarely on the appellant." *Mailer* v. *Mailer*, 387 Mass. 401, 407 (1982). *Scheuer* v. *Mahoney*, 80 Mass. App. Ct. 704, 709-710 (2011). However, this does not mean that an appellee is absolved of all responsibility for policing the progress of an appeal. Although an appellee has no affirmative obligation to nudge an appellant along in ordering a transcript, she risks unnecessary delay if she holds off doing so (knowing that an appellant may be able to take advantage of the cure provision before a Mass.R.A.P. 10[c] motion to dismiss is heard).[13] We turn now to the judge's application of rule 10(c) to the circumstances presented here.

d. *Inexcusable neglect.* A trial judge's determination that an appellant's neglect was "inexcusable" is subject to review only for an abuse of discretion. *Spivey* v. *Neitlich*, 59 Mass. App. Ct. 742, 744 (2003), citing *McCarthy* v. *O'Connor*, 398 Mass. 193, 196 (1986). We discern no such abuse here. The essence of Neuwirth's claim of "excusable neglect" is that he in good faith misunderstood his obligations. However, the cases are clear that this alone does not constitute "excusable neglect." See *Mailer* v. *Mailer, supra* at 406, quoting from *Goldstein* v. *Barron*, 382 Mass. 181, 186 (1980) ("The concept of excusable neglect does not embrace '[a] flat mistake of counsel about the meaning of a statute or rule' or other 'garden-variety oversight[s]' "). Although Neuwirth emphasizes that he was trying to navigate the shoals established by the appellate rules without aid of counsel, under the circumstances presented here, we see no reason not to hold him "to the same standards as litigants who are represented by counsel." *Maza* v. *Commonwealth*, 423 Mass. 1006, 1006 (1996).

As noted, Neuwirth sought to strengthen his case for excusable neglect by claiming that his misunderstanding of the rules was based in part on his conversations with Barrett. However, he did not actually claim that Barrett provided him with inaccurate information about what the rules required. In fact, Neuwirth's affidavits did not allege what Barrett said to him, but instead relied on the understanding he took from those conversations. The judge did not abuse her discretion in deciding

---

[13]In this manner, the rules appear to have been designed largely to be self-policing, with the judge called upon to resolve whether dismissal is warranted only where there has been no cure by the date of the hearing.

that Neuwirth's neglect was not excused by any conversations that he had with Barrett. Compare *Mailer* v. *Mailer, supra* at 407-408 (dismissal of appeal not warranted where attorney relied on clerk's factual representation that separate copy of transcript was already on file), with *Brown* v. *Quinn,* 406 Mass. 641, 643-645 (1990) (clerk's error in failing to notify parties did "not absolve[ ] [appellant's counsel] of his procedural responsibilities").

Nor can Neuwirth prevail based on the problems he claimed to have experienced in reaching Deveau. Except with regard to specific references that Neuwirth made to his inability to reach Deveau by telephone on September 11, 2012, and sometime during the previous week, Neuwirth's claims as to when he experienced such problems were pointedly vague. In addition, Neuwirth has not alleged that he had any problems reaching Deveau by e-mail, the method he successfully used to reach her in March, 2012, and again employed on September 10, 2012 (when the transcription issues leapt back to the fore). Even were we to credit Neuwirth's claim that he unsuccessfully tried to reach Deveau by telephone "at least six times," he has not shown that it was this that caused his several-month delay in ordering the transcript. The judge therefore did not abuse her discretion in concluding that any problems with Deveau's telephone failed to excuse Neuwirth's neglect. Compare *Ross* v. *Continental Resources, Inc.,* 73 Mass. App. Ct. 497, 512-513 (2009) (appeal reinstated where delay was caused solely by court reporter).

e. *The cure provision.* Although the cure provision in Mass. R.A.P. 10(c) has often been noted, there is a dearth of case law interpreting it.[14] In *Spivey* v. *Neitlich,* 59 Mass. App. Ct. at 747, we held that if all a tardy appellant has done by the date of a

---

[14]In *Russell* v. *McOwen-Hanelt,* 413 Mass. 106, 110 & n.8 (1992), the court summarily ruled that the appellants had not complied with the cure provision, but there was no reasonable debate that the appellant remained in non-compliance. In *Scheuer* v. *Mahoney, supra,* the appellant filed a notice of appeal challenging a judge's order dismissing his underlying appeal. The appellee filed a motion to dismiss the second appeal, because of the appellant's neglect in pushing that appeal along. Before the hearing on that motion to dismiss, the appellant had addressed her outstanding compliance by filing a required status report and the relevant transcript, and we noted that "[a]ccordingly, [the] judge denied [the appellee's] motion to dismiss." 80 Mass. App.

rule 10(c) hearing is to lodge a request for additional time, that does not constitute a cure within the meaning of the rule. Here, however, Neuwirth did more than simply request that the deadline he missed be extended. It is uncontested that prior to the hearing on the motion to dismiss, Neuwirth addressed the particular noncompliance on which both parties and the judge were focused, his outstanding obligations to "send or deliver" the CD to the transcriber and to place an order for its transcription.[15]

Smyth Law argues in effect that although Neuwirth took these steps, it was already too late for him to cure the noncompliance. The thrust of Smyth Law's argument appears to be that Neuwirth's tardiness could not be cured because it already had caused months of delay. However, accepting that argument effectively would read the cure provision out of the rule. As noted, the availability of the cure option has to mean that there will be cases where an appellant who has committed inexcusable neglect can nevertheless escape dismissal if he moves with sufficient alacrity to put the appeal back on track.

We caution that we are not stating that an appellant necessarily can take refuge in the cure provision regardless of the length of the delay. Indeed, as we previously have emphasized, where an appellant inexcusably has let an appeal languish for years, he cannot escape dismissal by arguing that, strictly speaking, he technically has complied with all express requests made by a clerk and with the few hard deadlines set forth in the rules. See *Scheuer* v. *Mahoney*, 80 Mass. App. Ct. at 708-712. However, the delay here was only a matter of months, and Neuwirth acted with immediacy to cure the problem when it was called to his attention. While even this relatively short delay never should

Ct. at 708. In *Tammaro* v. *Colarusso*, 11 Mass. App. Ct. 44, 48-49 (1980), we did not accept the appellant's argument that he could reinstate his appeal based on the cure provision, but we allowed the appeal to be in reinstated on other grounds. See *Points E., Inc.* v. *City Council of Gloucester*, 15 Mass. App. Ct. at 726 n.2 (characterizing *Tammaro* as case in which noncompliance had been cured before hearing on motion to dismiss).

[15]The judge seems to have suggested that such noncompliance can be cured only where the transcriber actually receives the recording by the date of the hearing. This is inconsistent with the plain language of Mass.R.A.P. 8(b)(3)(ii), which sets an appellant's obligations by reference to when he must "send or deliver" the recording to the identified transcriber.

have occurred, it was not so egregious as to deprive him of the protection of the cure provision of Mass.R.A.P. 10(c).

Nor do we see any fundamental unfairness in our reading the cure provision in this manner. Although Smyth Law claims to have been misled into thinking the transcript had been ordered months earlier, there were obvious signposts that it missed along the way. The oddly worded and incomplete fifteen-day notice that Neuwirth had served on Smyth Law in March, 2012, itself documented that the process contemplated by the rules already had started to veer off course. Any doubt on this point was then removed when Neuwirth failed to serve Smyth Law with a copy of his actual order for the transcript, as the rules specifically require.[16] In short, if Smyth Law was surprised on September 10, 2012, to learn that the transcript had not yet been ordered, it should not have been.

It bears noting that until September 10, 2012, Smyth Law did nothing to communicate with Neuwirth about whether the appeal remained on track. Compare *Scheuer* v. *Mahoney, supra* at 706 (noting that three years before appeal eventually was dismissed, appellee's counsel had warned appellant that "any further delay would be met with a motion to dismiss"). In fact, there is no indication that Smyth Law even focused on the progress of the appeal prior to that date. This inattention is hardly surprising when viewed in context. Before Neuwirth's newly hired counsel filed the motion to recall the execution (heard on September 10, 2012), Smyth Law was under the impression that it could move forward with an execution notwithstanding the pending appeal. It was only at this point that it began to become clear that the pending appeal stood as an impediment to Smyth Law's ongoing collection efforts.

Our analysis is not complete, because there are two additional grounds on which the judge's order potentially could be affirmed. See *Kelly* v. *Avon Tape, Inc.,* 417 Mass. 587, 590 (1994)

---

[16]Rule 8(b)(3)(ii) of the Massachusetts Rules of Appellate Procedure requires an appellant to file with the court and to serve on counsel a copy of the actual order "promptly" after he has placed it with the transcriber. The rule thus not only requires an appellant to take certain specified steps designed to ensure that a transcript is produced expeditiously, but also to document that he has in fact taken those steps in a way that is transparent to both the court and opposing parties.

(appellate court may affirm trial judge on any ground apparent on record). We address these issues in turn.

f. *Misrepresentation made at the recall hearing.* At the hearing on Neuwirth's motion to recall the execution (held September 10, 2012), the specific status of the pending appeal was discussed. According to the judge's later recollection, Neuwirth's counsel represented at that hearing "that the delay in obtaining a transcript of the electronic record in his Appeal was the fault of the transcriber who had yet to transcribe the electronic record."[17] In fact, as noted, the CD at that point remained in Neuwirth's possession.

Smyth Law highlighted the misrepresentation in its motion to dismiss (filed two days later). It did not question the good faith of Neuwirth's new counsel, but instead faulted Neuwirth — who was present at counsel's table — for not correcting the misstatement on the spot. The judge noted the misrepresentation in her ruling, but she did not rely on it as the basis for allowing the motion to dismiss. It is appropriate for us to consider whether her ruling should be affirmed on this ground.

Quite apart from Mass.R.A.P. 10(c), a judge has independent authority to impose the ultimate sanction of dismissal where a litigant has perpetrated a fraud on the court. See, e.g., *Munshani* v. *Signal Lake Venture Fund II, LP*, 60 Mass. App. Ct. 714, 719-720, 722 (2004) (dismissal of complaint warranted where plaintiff, by fabricating evidence and submitting false affidavit, undertook "an unconscionable scheme to deceive the court"). Although we agree with Smyth Law that the statement amounted to a serious misrepresentation that was allowed to stand longer than it should have,[18] we do not view the conduct here as sufficiently egregious to serve as an independent ground for dis-

---

[17]That counsel, who also represents Neuwirth in the appeal before us, has all but conceded that he said something along these lines. In any event, we accept the judge's recollection as accurate, because Neuwirth has not supplied the transcript of the September 10, 2012, hearing. Counsel represents that neither he nor his client had sought to mislead the judge, and that any misstatement he made was based on his own misunderstanding of what his client had told him about the delay in the appeal.

[18]Putting aside the question whether Neuwirth himself should have corrected his counsel at the hearing, counsel should have alerted the judge to the misstatement as soon as he discovered it after the hearing.

missal of the appeal. Smyth Law's claim that the misstatement was part of a deliberate effort to delay the appeal as long as possible is undercut by the lack of any indication that Neuwirth understood — during the relevant time period — that a delay in the appeal served his interests.[19] Moreover, for the reasons set forth *supra*, Neuwirth's noncompliance was hiding in plain sight. Finally, once Neuwirth was alerted to his tardiness and the fact that it could be grounds for dismissal, Neuwirth immediately reconnected with Deveau to address the underlying delay. Under the circumstances of this case, the misrepresentation does not provide sufficient independent grounds for dismissal. See *Monahan* v. *Washburn*, 400 Mass. 126, 128 (1987) ("Involuntary dismissal is a drastic sanction which should be utilized only in extreme situations[, and a]s a minimal requirement, there must be convincing evidence of unreasonable conduct or delay").

g. *Other noncompliance.* Although Neuwirth had cured the specific noncompliance on which the parties and the judge focused by the date of the hearing on the motion to dismiss, he does not appear to have cured his outstanding noncompliance with every aspect of Mass.R.A.P. 8(b)(3)(ii). Rule 8(b)(3)(ii) specifically requires that when an appellant orders that a transcript be produced, the "order" must "include a statement that the original of the designated portions of the transcript should be sent to the clerk of the lower court." The obvious intent of this requirement is to ensure that as soon as a transcript is completed, it is sent directly to the trial court for inclusion in the appellate record without any further delay. Neuwirth has made no showing that he ever complied with that requirement (prior to, at, or even after the motion to dismiss hearing), and his failure to file and serve a copy of the order itself constitutes a violation of rule 8(b)(3)(ii).[20] Accordingly, even though neither party has focused on this aspect of Neuwirth's noncompliance, it arguably

[19]It is also worth noting that during the period that Smyth Law contends that Neuwirth should have been focusing on his appeal, Neuwirth was defending against Smyth Law's vigorous efforts to pursue contempt and sale by execution (efforts that Smyth Law should have known had to await the completion of the appeal).

[20]From all that appears on the Probate and Family Court docket and other materials included in the record appendix, the transcript of the January 10,

supplies an independent basis for the judge's ruling. Indeed, there is some obvious sense in requiring that an appellant who faces dismissal because of his inexcusable tardiness be required to "cross every 't' " before he is allowed to take advantage of the cure provision of Mass.R.A.P. 10(c).

Nevertheless, we decline to rest on this ground here. Although appellate courts ordinarily defer to a trial court judge's dismissal of an appeal absent an abuse of discretion, an appellate court nevertheless remains "authorized to exercise [its] own independent judgment as to what is 'appropriate' in the circumstances of a given case . . . ." *Mailer* v. *Mailer*, 387 Mass. at 407, quoting from *Tammaro* v. *Colarusso*, 11 Mass. App. Ct. 44, 49 (1980).[21] See *Russell* v. *McOwen-Hanelt*, 413 Mass. 106, 111 (1992) (reiterating that appellate courts have power to "reinstate [an] appeal despite the fact that there was no error below" in trial court's dismissing appeal pursuant Mass.R.A.P. 10[c]). This independent authority serves as a safety valve that ensures that issues worthy of appellate review are heard, especially where the appellant's tardiness and any resulting prejudice to the appellee are both relatively minor. The issue that Neuwirth seeks to raise on appeal is an important one with broad implications for the administration of justice.[22] The over-

---

2012 hearing, which was completed by October 22, 2012, actually has never been sent to the court (as the transcriber presumably would have done had she been so instructed), but instead remains in Neuwirth's possession.

[21]In *Tammaro* v. *Colarusso*, *supra*, we allowed reinstatement of an appeal even after concluding that the judge did not err in dismissing it pursuant to Mass.R.A.P. 10(c). In *Mailer* v. *Mailer*, 387 Mass. at 406-407, the court quoted *Tammaro* with approval. In *Mailer*, the Supreme Judicial Court concluded that the judge improperly limited the appellant's ability to show excusable neglect, and then decided the question itself in lieu of remanding the issue to the trial court. *Ibid.* See *Custody of a Minor (No. 3)*, 16 Mass. App. Ct. 998, 999-1000 (1983) (allowing reinstatement of appeal of care and protection order without concluding that trial court judge erred in finding "inexcusable neglect" based on lengthy delays that appellants had caused); *Maciuca* v. *Papit*, 31 Mass. App. Ct. 540, 545 (1991), quoting from *Doten* v. *Doten*, 395 Mass. 135, 140 (1985) (reiterating that appellate court has "broad authority 'to consider whether equity requires that procedural flaws be overlooked' ").

[22]Although both parties have touched on the underlying merits, these issues have not been briefed fully, and we do not reach them now. Nor do we address the extent to which Neuwirth has adequately preserved all the issues he now seeks to raise on appeal. The question of potential waiver was not raised or briefed by either party.

all delay here was short, and Neuwirth put the appeal back on track immediately after the delay was called to his attention. So long as he immediately sends the completed transcript to the register of probate, his failure to have instructed properly the transcriber will have caused no additional delay. Finally, Smyth Law has not shown how its ability to defend against the underlying appeal has been compromised by the delay. While we are sympathetic to Smyth Law's desire to be paid any additional compensation it is owed, it will be able to argue that it is entitled to interest on any such debt. Under these circumstances, we decline to rely on any additional noncompliance with Mass. R.A.P. 8(b)(3)(ii) as grounds for affirming the judge's order.

3. *Conclusion.* We vacate the order dismissing Neuwirth's underlying appeal. So long as Neuwirth files the hearing transcript with the register of probate within five days of the rescript, his notice of appeal shall be reinstated and the register forthwith shall complete assembly of the record.

*So ordered.*